DUFRESNE, Judge.
Appellants in this eviction proceeding are the lessee, National Business Consultants, Inc. (NBC), and its President and surety, Robert Namer, contending that the trial court erred in (1) finding that the lessor, Sauve Heirs, Inc., had valid claims for cancellation of the lease and possession of the leased premises for non-payment of rent together with attorney fees and in (2) dismissing appellants’ reconventional demand for damages based on appellee’s breach of an alleged agreement to cancel the lease and repurchase appellants’ option to buy the leased premises.
The lease was entered into on July 7, 1979 and provided for a primary term of twelve years. The monthly rental during the pertinent term of the agreement was $1,832. The lease contains these clauses numbered 119-135 and 150-151:
119-135:
“Should the Lessee ... fail to pay the rent ... for a period of ten (10) days after written notice has been given Lessee, then at the option of the Lessor, the rent for the whole unexpired term of this lease shall at once become due and exigi-ble; and Lessor shall have the further option to at once demand the entire rent for the whole term, or to immediately cancel this lease, or to proceed for past due installments only, reserving its right to later proceed for the remaining installments, all without putting Lessee in de *688 fault, Lessee to remain responsible for all damages or losses suffered by Lessor, Lessee hereby assenting thereto and expressly waiving the legal notices to vacate the premises. Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of Lessor arising from this lease, Lessee shall pay, as fees and compensation to such Agent or Attorney an additional sum of ten percent of the amount of such claim, the minimum fee, however, to be $25.00, or if the claim be not for money, then such sum as will constitute a reasonable fee together with all costs, charges and expenses ... 150-151:
Any notices, demands or citations under this lease, may be served personally on Lessee or by mail addressed to Lessee at the within leased premises....
The lease included an option to purchase, clause 166:
Lessee is hereby granted the option upon the expiration of the tenth (10th) year of this lease to purchase the land and building which is the subject of this lease for the total amount of $130,000.00, all cash, provided, however, that this lease is in full force and effect....
Attached to the lease was the corporate resolution authorizing appellee's President, Charles McHale, to execute said lease and option to purchase:
“... BE IT RESOLVED that this corporation lease the premises ... Parish of Jefferson ... 3313 Kingman Street. BE IT FURTHER RESOLVED that Charles E. McHale, Jr., President of this corporation, be and he is hereby authorized, empowered, and directed, for and in the name of said corporation, to appear before any Notary Public and sign and execute the necessary lease above described, to receive any cash consideration therefore, and further to do any and all acts and things necessary and proper in the premises....”
In January, 1986 appellant moved from the leased premises. Negotiations were then begun by Robert Namer for NBC with Frank Spalitta for Sauve Heirs, Inc. to arrive at a mutually acceptable agreement to cancel the lease. Because the lease gave appellants an option to purchase the leased premises in 1991 for $130,000 (its present appraised value had appreciated to $180,000), the negotiations to cancel the lease included discussions for a mutually acceptable price at which the appellee could “buy-back” appellants’ option to purchase. These negotiations culminated in an agreement which was outlined by Mr. Spalitta in a letter dated April 30, 1986 and sent to Mr. Namer:
“We are writing you this letter to set out our formal understanding regarding the mutual cancellation of our ... ‘Lease’.... Effective April 30, 1986, this lease ... and options is ... cancelled ... subject only to the following: 1. $20,-000.00 Payment by Sauve Heirs, Inc. to National Business Consultants Inc. on or before May 16, 1986....”
Mr. Namer subsequently signed the letter on behalf of NBC and returned it to Mr. Spalitta. However, the agreement as outlined in the April 30, 1986 letter was not acceptable to appellee, and it was therefore not signed by Mr. McHale. Despite the failure of Mr. McHale to sign the agreement, Mr. Namer considered it binding on the appellee. On May 22, 1986, Mr. Namer threatened to sue appellee because he had not received the $20,000 due under the terms of the agreement on May 16, 1986. Mr. Namer also stopped payment of rentals as of the date of the agreement on April 30, 1986.
The failure of appellants to pay rentals for May and June prompted the following letter dated June 2, 1986, in which Mr. McHale advised Mr. Namer that:
“... After due consideration of the matter of cancellation of your lease, Sauve Heirs, Inc. has decided not to enter into a cancellation agreement with you at this time.... you are, therefore, requested to make the monthly payments of rent for both May and June in the amount of $1,832.00 for each month. If not, I will consider the lease in default and take appropriate action in due course....”
*689 By letter dated June 4, 1986 counsel for appellants responded to the default notice, stating that although he felt that NBC had legal recourse for the breach of the alleged cancellation agreement dated April 30, 1986, he had “advised NBC that they must continue to pay the rent [for May and June] because of the separate lease agreement.” When the rentals remained unpaid, the instant suit was filed by the appellee on July 1, 1986. From judgment in favor of appel-lee, appellants take this appeal asserting four assignments of error.
In appellants’ first assigned error, it is argued that appellee’s claim for damages under the lease must fail because appellee made no showing of its ownership of the leased premises, nor was written notice of default ever received by appellant. Appellant contends that the lease, paragraphs 150-151, requires that notice of default be sent to the leased premises or personally served on appellants, neither of which was done.
The trial court rejected this argument. Ownership of leased premises is not an issue when a lessor seeks to evict one who possesses as lessee; the lessor may be someone other than the owner. LSA-C.C. arts. 2681, 2682. Here, appellee presented the lease agreement showing that appellee is the lessor and that appellants are the lessees. Appellee alleged that appellants had failed to pay rentals when due. Accordingly, appellee presented a prima facie case for damages under the lease. As to notice of default, while clauses 150-151 specify that notice of default may be addressed to lessee and sent to the leased premises or be served personally on lessee, neither method was made mandatory. The notice of default sent by appellee to appellants’ correct mailing address on June 2, 1986 satisfied the notice requirement contained in the lease. Furthermore, the letter dated June 4, 1986 written by appellants’ attorney wherein he states that he advised his client to pay past due rentals, shows appellants’ knowledge of the default notice. This assignment of error is without merit.
In appellants’ second and third assignments of error, it is argued that appel-lee breached the alleged cancellation agreement dated April 30,1986. Appellants contend, that in reliance on this agreement it stopped paying rentals as of the date of the agreement, and that it released a prospective sub-lessee, thereby suffering damages. Appellee counters that because McHale never signed the agreement, it can have no binding effect on the parties, and it cannot give rise to appellants’ reconventional demand for damages. Appellee additionally argues that the agreement is not binding as it was never actually signed by anyone other than Mr. Namer.
The issue to be determined here is whether the letter dated April 30, 1986 did, in fact, effect a binding agreement between the parties. At trial, Mr. Namer testified that at all times he felt that Mr. Spalitta had full authority to act on behalf of appel-lee, and that it was Mr. Spalitta who told him no further rentals need be paid because of their mutual agreement to cancel the lease. Both Mr. McHale and Mr. Spal-itta testified that Mr. Namer was told that Mr. Spalitta had no authority to bind appel-lee, and that any agreement was subject to Mr. McHale’s approval. Mr. Spalitta further testified that he never told Mr. Namer that he could stop paying rentals on the leased property.
The trial court found for appellee, and in oral reasons for judgment indicated that he had resolved the issues by looking to the parties’ lease agreement, itself. The trial court noted that the lease, although negotiated by Mr. Spalitta and Mr. Namer, was signed only by Mr. McHale and Mr. Namer; and that any and all addendums to it were either signed or initialed by McHale or Namer. The trial court also observed that the corporate resolution dated June 22, 1979 and attached to the lease, gave power only to Mr. McHale as its President to sign and execute on its behalf any agreements relating to the lease. On the basis of this evidence, the trial court concluded: “... clearly Mr. Namer knew that Mr. McHale was the man that ultimately had to be dealt with ...” The trial court, accordingly dismissed appellants’ reconventional demand, *690 and ordered the lease cancelled, and payment of back rents together with attorney fees (as per lease agreement), and legal interest from date of judicial demand.
We have reviewed the record and have found no error either in the trial courts conclusions on the evidence or in its apparent resolution of the conflicting testimony in appellee’s favor. While appellants argue numerous cases in support of their argument that Mr. Spalitta had apparent authority to bind appellee, we find these cases inapplicable to the facts of the instant case, which show that appellants were expressly made aware that Mr. Spalitta did not have authority to bind the appellee. See generally, Byrd v. Cobbs, Allen & Hall Mortg. Co., Inc., 466 So.2d 587 (La.App. 5 Cir.1985); National Bank of Bossier City v. Nations, 465 So.2d 929 (La.App. 2 Cir.1985); Spiers v. Seal, 426 So.2d 631 (La.App. 1 Cir.1982) writs denied 433 So.2d 150 (La.1983); North American Sales A., Inc. v. Carrtone Lab., Inc., 214 So.2d 167 (La.App. 4 Cir.1968) writs refused 216 So.2d 306 (La.1968). Accordingly, appellants’ second and third assignments of error are without merit.
In this last assignment of error appellants reurge their exception filed previously in this court, that appellee has no right of action, which is predicated on appellants’ post trial discovery that the corporate charter of the appellee had been revoked prior to appellee’s filing suit. This exception was previously denied by a panel of this court for reasons which we maintain:
... LSA-C.C.P. art. 2163 states that the appellate court may consider the peremptory exception only if “proof of the ground of the exception appears of record.” The grounds of appellants’ exception are not part of the record in this case.
Further, even if we were to consider the exception on the evidence offered by appellants (a photocopy of the Secretary of State’s certificate that the Articles of Incorporation and the Corporate Franchise of Sauve Heirs, Inc., were revoked on October 21, 1985), the exception is made moot by appellee’s response, establishing that the Articles of Incorporation and Certificate of Incorporation have been reinstated and the revocation set aside....
Accordingly, for the reasons expressed in this opinion we affirm the judgment of the trial court with appellants to bear all costs.
AFFIRMED.