WICKER, Judge.
Connecticut National Life. Insurance Company; Delta Health Network, Inc.; and Delta Care Group Trust, the defendants in this suit to enforce payment of benefits under a medical insurance policy, appeal a judgment in favor of the plaintiff insured, John B. Waldrip. The judgment in question, one of several rendered in this proceeding, required these insurers to provide continuing coverage to Waldrip under a terminated policy for his liver ailment. It also awarded penalties and attorney’s fees, awarded benefits for medical care unconnected with his liver disease which were incurred prior to the termination of his policy as well as penalties on these unpaid benefits, and awarded interest and costs. The judgment denied Waldrip’s claim for a lump sum award representing future medical expenses. The judge deferred a determination of the amount of attorney’s fees until a hearing could be held on this issue, and the judgment as a result of that hearing is pending on a separate appeal. We amend and, as amended, affirm.
This is the second appeal in this case. The previous judgment in Waldrip’s favor awarded him the medical expenses incurred in connection with his liver transplant, approximately $160,000.00. We affirmed the judgment against CNL, but we remanded for a determination of whether or not Delta Care and Delta Health were “insurers.” The facts of the case are outlined in that opinion, 566 So.2d 434 (La.App.1990). The judge has not yet made a ruling on the liability of Delta Care and Delta Health, so they remain parties to this instant appeal.
The issues are whether CNL, Delta Health, and Delta Care were unjust and unreasonable in denying coverage under their “experimental” care exclusion either before or after the policy was cancelled and whether they are liable for expenses incurred after cancellation of the policy for a disease which manifested itself prior to the cancellation.
*1174 CONTINUING COVERAGE
Waldrip had group health coverage through his law firm beginning January of 1987. That coverage was in effect when he developed terminal liver dysfunction which resulted in a successful liver transplant on March 3, 1988. On June 29, 1988, Delta Health cancelled the law firm’s policy effective September 1, 1988, because the coverage was no longer profitable. It agreed to “pay all valid claims incurred” prior to the cancellation date. We have already held that all claims submitted prior to termination were covered so those amounts are no longer at issue.
The judge ruled that CNL, Delta Care, and Delta Health were liable to Waldrip for claims related to his liver ailment although they were incurred after cancellation of the policy.
La.R.S. 22:215A(l)(d) provides that
modification, amendment, or cancellation shall be without prejudice to any claim for benefits accrued, or for expenses incurred for services rendered, prior to such modification, amendment, or cancellation. Benefits and expenses incurred shall be as defined and limited by the terms of the policy.
The policy defines expenses incurred: “We will deem an expense as incurred: 1) on the date the care or treatment, for which a charge is made, is received; or 2) on the date the supplies are obtained.” The policy does not define “benefits accrued.” The judge found that the phrases “benefits accrued” and “expenses incurred” had different meanings, and he proceeded to determine what “benefits accrued” meant with regard to the fact of this case. Citing Soniat v. Travelers Insurance Co., 538 So.2d 210 (La.1989), he ruled that “benefits accrued” means “services related to the condition of which the insurer was aware before it cancelled the policy.” Soniat at 215. He concluded:
The amendments [to La.R.S. 22:215A(l)(d) ] allow the insurer to define “benefits accrued” and “expenses incurred.” Here, the insurer defined only “expenses incurred.” Also, the policy refers to itself as a “Comprehensive Medical Expense Benefit” policy. Because this phrase is ambiguous, this Court finds that “benefits accrued” under this policy refers to services related to plaintiffs liver ailment which arose during the policy term.
We hold that the judge’s interpretation of the term “benefits accrued” as used in La.R.S. 22:215A(l)(d) is not erroneous as a matter of law and decline to reverse his ruling that CNL, Delta Health, and Delta Care are liable for continuing expenses for Waldrip’s liver condition.
PENALTIES AND ATTORNEY’S FEES
When Waldrip was admitted to Ochsner Foundation Hospital for a liver transplant, both he and Ochsner tried to confirm coverage for this procedure. CNL advised Delta Health that liver transplantation was considered experimental and not covered by the policy. Delta Health did not advise Waldrip of the alleged non-coverage until months later.
La.R.S. 22:657A provides:
All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist.... Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney’s fees to be determined by the court....
Subsection B deals with matters which are not germane.
The claims submitted by Waldrip were not paid timely because of CNL’s interpretation of its policy provisions to exclude liability for liver transplants. That provision excludes coverage for
*1175 Care, treatment, services or supplies not approved or accepted as essential to the treatment of injury or sickness by any of the following:
(1) the American Medical Association;
(2) the United States Surgeon General;
(3) the United States Department of Public Health; or
(4) the National Institutes of Health....
We previously upheld the judge’s ruling that this provision was in violation of the entire contract statute, La.R.S. 22:628, and affirmed his decree that Waldrip’s liver transplant was a covered expense.
While this appeal has been pending, however, CNL has filed an exception of no cause of action for the first time, contending that Waldrip’s claims under La. R.S. 22:657 are preempted by 29 U.S.C. Sec. 1132 (ERISA). ERISA is a comprehensive federal system which regulates employee welfare benefit plans and preempts the application of some state law. Cramer v. Association Life Ins. Co., 569 So.2d 533 (La.1990); Soniat, supra.
This court may consider CNL’s exception for the first time on appeal “if proof of the ground of the exception appears of record.” La.C.C.P. art. 2163. (emphasis added); Sauve Heirs v. National Bus. Consultants, 522 So.2d 686 (La.App. 5th Cir.1988), writ denied 523 So.2d 1341 (La.1988). No proof of CNL’s allegation, that its policy of insurance is an employee welfare benefit plan, is in the record. “No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.” La.C.C.P. art. 931. Consequently, we will not consider CNL’s exception now but will consider La.R.S. 22:657 in determining whether or not CNL’s refusal to pay Wal-drip’s claims was based on “just and reasonable grounds.”
The judge found that CNL failed to sufficiently investigate the applicability of its exclusionary provision, i.e. whether or not any or all of these agencies approved or accepted liver transplantation as essential to the treatment of terminal liver disease. He based that determination on the testimony of Thomas Gott, CNL’s assistant vice president.
Gott testified that it was CNL’s responsibility to determine coverage, with him making the ultimate decision with regard to the experimental treatment exclusion. He also testified that he scrutinized each aspect of Waldrip’s claim with more than usual care since it was the biggest claim CNL had ever had.
He received an inquiry from Delta Health around March of 1988 requesting information about this potential claim; and his response was that, based on the information he had, liver transplants would not be covered because they were experimental. On July 26, 1985, in a memorandum to CNL’s agents, he had concluded that liver transplants were still considered experimental. To reach that conclusion, he had contacted various organizations “such as the Health Insurance Association of American, the New England Claim Association.” He was asked whether he contacted any government agencies at that time and responded, “We contacted AMA [American Medical Association], and I think that was the only one at the time.” He also replied, “The only one [governmental agency] I can remember was the Department of Human Services, I think, but again, it was like five years ago and I am not sure.” He testified that at that time, five years ago, he did not find anybody who considered liver transplants as non-experimental. He also contacted the Health Insurance Association of America [HIAA], an association of insurance carriers, in July of 1985, and reviewed and researched periodical bulletins from them. HIAA based its opinions on recommendations of the Counsel of Medical Specialties Societies, not a government organization but .an organization of insurance companies and medical specialists who evaluated new technological procedures. He was then asked about developments since 1985; and he responded that he kept up with these developments through monthly meetings, annual seminars, and periodicals of the New England Claim Association. He also reviewed a bulletin of the Health Care Financing Administration, a government agency which monitors Medicare cov *1176 erage. The crux of his testimony on the issue, whether or not CNL had just and reasonable grounds to deny Waldrip’s claim, follows:
Did you make any attempt to update it [the information] in 1988?
Yes, we did.
What did you do at that time?
We contacted some other carriers in the area to see what their position was. We asked them if they had received any medical bulletin that may have moved the liver transplant procedure from the experimental to a non-experimental realm, we called HIAA and we found it had not changed.
Sir, when you called HIAA, did you want to know [what] HIAA said, or did you want to know what everybody in the world said?
We wanted to know what the medical profession said from HIAA because it is [sic] always been our feeling if anyone would know new changes in that type of field, HIAA would be the first.
Did you all [contact] any governmental agencies at that time?
We tried calling the Human Services Department, I think. But we really didn’t get an answer from them. It was later in '88 that we attempted to call all governmental agencies that we could think of.
Gott testified that he was pretty sure either he or his claims manager contacted the AMA in March, or at least in September of 1988. He also testified that he was not aware of any documents or information that said liver transplants were not experimental. It appears that the only evidence from any governmental agency in Gott’s possession was a publication of the U.S. Department of Health and Human Services dated September 1988, the Medicare Coverage Issues Manual. This is not, however, one of the agencies CNL chose to list in its own policy as determinant of the issue.
Gott also testified on cross examination that, when Delta Health called him in March of 1988, he answered that liver transplants were not covered without further investigation at that time because he had not at that time any information to indicate otherwise, based upon the monthly bulletins he received from other insurance carriers. Furthermore, when pressed to state what information he had from the AMA when he first prepared his memorandum in 1985, he admitted that the AMA did not say that liver transplants were not essential to the treatment of end-stage liver disease “in those words.” He was also unaware of an AMA publication of June 1986, Information Report on the Council of Scientific Affairs, that concluded liver transplant was a therapeutic modality for end-stage liver disease and a National Institutes of Health Conference statement dated June of 1983 which concluded that liver transplant was a therapeutic modality for end-stage liver disease. The testimony on this issue concluded:
Mr. Gott, up until the twentieth day of March, 1989 [the date of his deposition], had you ever seen any document from any of the four agencies listed in the insurance policy that stated in any way, form or fashion that liver transplants are not accepted or approved as essential to the treatment of terminal liver dysfunction?
No, but I did not see any statement from those four agencies saying the opposite. Never seen anything anywhere saying that they do not approve or accept it, have you?
No.
Gott’s testimony also revealed that CNL failed to pay even the hospital bills predating the transplant within the thirty-day period required by the statute.
The judge heard this testimony and concluded that
CNL did not have just and reasonable grounds to deny the claim. It did not adequately investigate the experimental nature of liver transplantation while its insured was forced to wait for a life-saving operation. It did not comply with the requirements of its own policy: that it determine that liver transplantation was not approved or accepted as essential to the treatment of end-stage liver disease by any of the four listed agencies.
*1177 We agree with his conclusions and do not find them to be manifestly erroneous. This was a factual finding and should not be disturbed unless it is clearly wrong. Casey v. Proprietors Life Assur. Co., 470 So.2d 339 (La.App. 5th Cir.1985).
While a court may disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute.... However, when an insurer chooses to resist liability based on a supposed defense, which a reasonable investigation would have proved to be without merit, it will be liable for statutory penalties....
Bonura v. United Bankers Life Ins. Co., 552 So.2d 1248, 1254 (La.App. 1st Cir. 1989) (citations omitted), writ denied 558 So.2d 1125 (La.1990). See also Casey v. Proprietors Life Assurance Company, supra.
With regard to those claims which were non-transplant-related and which arose prior to the policy’s cancellation, the judge ruled that untimely payment subjected CNL, Delta Health, and Delta Care to penalties and attorney’s fees. Gott admitted that non-transplant claims were not paid within the thirty-day statutory limit, and he presented no just and reasonable explanation for the delay. We do not believe that the judge was clearly wrong in this award, and we decline to reverse him.
With regard to claims submitted after the policy’s cancellation, we also agree with the judge’s conclusion that CNL’s failure to pay them was unjust and unreasonable. See Howell v. Blue Cross of Louisiana, 563 So.2d 1289 (La.App. 3rd Cir.1990). However, the amount awarded was less than the stipulated amount of $17,133.95. We therefore amend the award of post-cancellation expenses in the amount of $4,151.00, the amount of stipulated unpaid prescription drug bills. We increase it to include $5,908.95 unpaid hospital bills and $7,074.00 unpaid doctor bills. We similarly amend the award of penalties to $17,133.95. MONETARY DAMAGES
Waldrip had originally sought a money judgment in the amount of anticipated future liver-related expenses. He argued that since CNL was no longer in the business of writing health coverage, it would not be able to process or pay his claims. He also argued that, based upon CNL’s past performance in his case, continued supervision by the court to enforce this obligation would be necessary.
Gott testified, however, that although CNL is out of the health and accident insurance business, any claims against it would be paid by the New England Insurance Company, a corporate owner of CNL. The judge found that “CNL remains a solvent corporation and it could set up claim procedures, either in-house or on a contract basis, to facilitate handling of this claim.” He ordered CNL to furnish Waldrip with claim forms and similar procedures for processing as existed under the old policy.
We believe this to be an acceptable manner by which to satisfy CNL’s obligations to Waldrip, and we do not believe the judge has abused his discretion to fashion an appropriate remedy. La.C.C. art. 4.
LIABILITY OF DELTA HEALTH AND DELTA CARE
We have previously remanded the issue of whether or not Delta Health and Delta Care are “insurers.” Until the judge has ruled on this issue, we are unable to determine whether or not these entities are liable to Waldrip. We pretermit a determination of their liabilities.
CONCLUSION
We affirm the judgment in favor of John B. Waldrip and against Connecticut National Life Insurance Company which requires continuing coverage of all his liver-related medical expenses; which awards him $160,-613.65 in penalties under La.R.S. 22:657; and which awards him an additional $20,-414.00 in penalties for non-liver-related expenses which were not timely paid. We affirm the award of post-cancellation expenses but increase the award to $17,-133.95. We affirm the award of penalties to reflect this amendment, or $17,133.95. We affirm the judgment in favor of Connecticut National Life Insurance Company which denies the petition of John B. Wal-drip for payment of future medical benefits *1178 in the amount of the $1,000,000.00 policy limits less any amounts already paid for medical benefits and which requires that Connecticut National Life Insurance Company provide him with a claim mechanism for payment of his continuing medical expenses. Connecticut National Life Insurance Company must pay the costs of this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.