727 So.2d 579 (1998)
Florence T. ROBINSON, Walter Wright and Juanita Stewart
v.
Honorable Richard P. IEYOUB, in His Capacity as Attorney General of the State of Louisiana, Louisiana Board of Commerce and Industry, and Rollins Environmental Services, Inc.
No. 97 CA 2204.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
Rehearing Denied March 4, 1999.
*580 Melvin L. "Kip" Holden, Baton Rouge, for Plaintiffs/Appellees.
Susan Dunham and Daryl Manning, Baton Rouge, for Defendant/Appellant, La. State Bd. of Commerce and Industry.
J. Wendell Clark, Baton Rouge, for Defendant/Appellant, Rollins Environmental Services.
Thomas Milliner, New Orleans, for Intervenor/Appellee, Tulane Environmental Law Clinic, Environmental Action Network, and La. Coalition for Tax Justice.
Before: SHORTESS, C.J., CARTER and WHIPPLE, JJ.
CARTER, J.
In 1994, the Louisiana Board of Commerce and Industry (the Board) voted to grant an industrial ad valorem tax exemption to Rollins Environmental Services, Inc. (Rollins). Florence T. Robinson, Walter Wright, and *581 Juanita Stewart sued Rollins and the Board. They also sued the Attorney General for the State of Louisiana, but he was dismissed from the action because he had no role in the awarding of the exemption. The plaintiffs sought a declaration that the Board's action was unconstitutional and an injunction prohibiting implementation of the exemption. The Louisiana Coalition for Tax Justice and the Louisiana Environmental Action Network intervened, aligning themselves with the original plaintiffs. (The original plaintiffs and the intervenors will be collectively referred to as plaintiffs.)
Defendants filed numerous motions and exceptions, including a peremptory exception raising the objection of lack of subject matter jurisdiction. After trial on the merits, the court overruled the exception of lack of subject matter jurisdiction and rendered judgment declaring the Board had exceeded its constitutional authority when it granted the ad valorem tax exemption to Rollins. Rollins and the Board appealed, urging seven and eight assignments of error, respectively.

DISCUSSION

Subject Matter Jurisdiction
The first assignment of error raised by each defendant is that the trial court erred in overruling the exception of lack of subject matter jurisdiction.
The Louisiana Constitution vests the district courts with jurisdiction over all "civil and criminal matters", except as otherwise authorized by the constitution. LSA-Const. art. V, § 16. This Court previously found that regulation and control of ad valorem tax exemptions were matters constitutionally delegated to the Board and the governor. As such, these matters were outside the subject matter jurisdiction of the district courts because they are matters traditionally handled by the executive branch and are not considered "civil matters" within the grant of jurisdiction of LSA-Const. art. V, § 16. See Boeing Company v. Louisiana Department of Economic Development, 94-0971, p. 12 (La.App. 1st Cir.6/23/95); 657 So.2d 652, 659.
However, the right to judicial scrutiny exists when there is a claim of deprivation of a constitutionally protected right, an assertion that an agency exceeded constitutional authority, or an allegation that the action of an administrative agency exceeded its legislative grant of authority. Boeing Company v. Louisiana Department of Economic Development, 657 So.2d at 657.
Plaintiffs allege that the Board "exceeded its constitutional authority in authorizing, proposing to authorize, or enter into" the contract for an ad valorem tax exemption because Rollins was "not authorized to receive an industrial tax exemption under the Louisiana Constitution." Specifically, plaintiffs contended Rollins was not a manufacturing establishment according to the constitutional definition and that the Board exceeded its authority in granting an ad valorem tax exemption to Rollins. The district court agreed that this allegation was enough to bring the action within its original jurisdiction. We agree.
The allegation that the Board acted in an unconstitutional manner requires that the decision regarding the tax exemption be reexamined. If the courts do not have jurisdiction to review allegations of unconstitutional actions, there is no judicial review or recourse of any nature against an unbridled abuse of power which exceeds constitutional authority. In the case sub judice, the allegation that the Board exceeded its constitutional authority by granting an exemption to Rollins requires this Court to determine if Rollins is a manufacturer. If the Board granted an exemption to an entity that is not a manufacturer, the Board exceeded its constitutional grant of authority. Thus, we find no error in the trial court's exercise of subject matter jurisdiction and we affirm the trial court's denial of appellant's peremptory exception raising the objection of lack of subject matter jurisdiction.

Standing
Defendants argue that the plaintiffs did not have standing or a right of action to bring this matter before a court. Our jurisprudence recognizes the right of a taxpayer to enjoin unlawful action by a public body. Under Louisiana law, a taxpayer may resort to judicial authority to restrain *582 public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1357 (La.1991). The fact that the taxpayer's interest may be small and insusceptible of accurate determination is not sufficient to deprive him of that right. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d at 1357-58. With these principles applied to the matter before us, we find the trial court did not err in its ruling that the plaintiffs had standing and a right of action to bring this matter before a court. The record reflects the plaintiffs are members of the community which would benefit from the payment of ad valorem taxes. Accordingly, the plaintiffs have demonstrated a sufficient interest to sustain their action.

Exception of Res Judicata
On appeal, Rollins has urged the peremptory exception raising the objection of res judicata with respect to the issue of whether Rollins is a manufacturing establishment under the constitutional definition. In support of this argument, Rollins refers, in its exception and the memorandum in support thereof, to three separate lawsuits which were filed between 1990 and 1991 by Rollins. Copies of the petitions in these suits were attached to the exception and memorandum in support as exhibits. Rollins also attached several other exhibits to the exception and memorandum, which it asserts prove that the issue of Rollins' status as a manufacturing establishment has been fully and finally litigated between the parties herein.
Pursuant to LSA-C.C.P. art. 2163, the court of appeal may consider the peremptory exception filed for the first time in the appellate court, if it is pleaded prior to submission of the case for decision, and "if proof of the ground of the exception appears of record." (Emphasis added). Ward v. Firemen's Fund Insurance Company of Newark, New Jersey, 501 So.2d 266, 268 (La.App. 1st Cir.1986), writ denied, 503 So.2d 495 (La. 1987).
In the instant case, the evidence upon which Rollins relies as proof of the grounds of its exception is not part of the record. Rather, Rollins has attempted to have this evidence considered by attaching it to the exception and memorandum in support of the exception. We cannot consider the documents attached to those pleadings, and we find that the record before us does not support the grounds alleged by defendants for maintaining the exception. See Sauve Heirs, Inc. v. National Business Consultants, Inc., 522 So.2d 686, 690 (La.App. 1st Cir.), writ denied, 523 So.2d 1341 (La.1988). Thus, Rollins' exception raising the objection of res judicata is denied.

Constitutional Definition
The trial court found that Rollins did not meet the definition of a manufacturing establishment under Article VII, § 21(F) of the Louisiana Constitution. Under that provision, manufacturing establishments are eligible for consideration of an industrial ad valorem tax exemption. Article VII, § 21(F) of the Louisiana Constitution defines manufacturing establishment as follows:
The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.
The record reflects Rollins owns and operates a hazardous waste incinerator facility in East Baton Rouge Parish. Rollins' incinerator accepts hazardous material from a variety of sources for processing in its facility. Rollins takes this hazardous waste and burns it at its facility. As a result of the incineration process, some of the hazardous material is released into the atmosphere in the form of carbon dioxide and water vapor. The material that remains is called incinerator ash. Incinerator ash is a hazardous substance according to federal and state rules and regulations. *583 Rollins places the incinerator ash in a landfill. At the time of trial, Rollins had not attempted to test and delist any of its incinerator ash, which is a prerequisite for selling such waste.
Rollins argues that because its incineration process changes the quality and composition of the hazardous waste it receives, that such a change satisfies the definition of a manufacturing establishment under the constitution. Plaintiffs argue that because the incinerator ash is still a hazardous substance and is not "suitable for use" that Rollins cannot be considered a manufacturer according to the constitution. Accordingly, the issue before this Court is whether the "suitable for use" requirement not only applies to raw materials worked into wares, but whether establishments which change the shape, quality, or combination, must also make the changed matter "suitable for use" to meet the constitutional definition of a manufacturing establishment.
The Louisiana Supreme Court outlined the principles of constitutional interpretation in Succession of Lauga, 624 So.2d 1156, 1165 (La.1993):
In general, the constitution is subject to the same rules of interpretation as other laws and written instruments. When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be applied as written without further interpretation in search of its intent. Every provision must be interpreted in light of the purpose of the provision and the interests it furthers and resolves. When a constitutional provision is identical or very similar to that of a former constitution, it is presumed that the same interpretation will be given to it as was attributed to the former provision. Because the question of how the constitution was understood by the people adopting it, not merely how it was viewed by the drafters, the debates of a convention, as a general rule, cannot be resorted to for the purpose of varying the otherwise clear and unambiguous meaning of a constitutional provision.
The supreme court also found that in construing a constitutional provision, the courts may consider the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied, in light of the history of the times and the conditions and circumstances under which the provision was framed. Succession of Lauga, 624 So.2d at 1160.
In our review of LSA-Const. art. VII, § 21(F), it is not clear whether the "suitable for use" requirement should apply to both prongs of the manufacturing establishment definition. Because it is not clear, we need to examine what was sought to be accomplished by this provision. The term manufacturing establishment was first defined under the constitutional provision providing for the ad valorem tax exemption when article X, § 4(10) of the Louisiana Constitution of 1921 was amended pursuant to Act No. 37, Regular Session of 1938, as part of the Industrial Tax Exemption Program. The purpose of the Industrial Tax Exemption Program is to provide an incentive for businesses to locate and/or expand in Louisiana, thereby increasing employment opportunities and boosting state and local economies. The present definition of manufacturing establishment contained in the Louisiana Constitution of 1974 mirrors the language of the 1938 amendment to the 1921 Constitution.
As plaintiffs point out, the exact language used to define a manufacturing establishment in the constitution originates from the judicial definition of a manufacturer. This definition can be traced to two cases. The first is City of New Orleans v. LeBlanc, 34 La. Ann. 596 (La.1882), wherein the court defined a manufacturer using the exact language now found in our constitution, but also indicated that the end result of a manufacturer's work would yield a product to be placed in the stream of commerce. The court wrote that "manufacturers are the suppliers of the dealers, or consumers." City of New Orleans v. LeBlanc, 34 La. Ann. at 597-98. The court's initial definition of a manufacturer encompassed his role in commerce and trade, which necessitated the production of a good that the dealers and consumers would find useful, thereby creating a demand for that product.
*584 In City of New Orleans v. Ernst, 35 La. Ann. 746 (La.1883), the court also defined a manufacturer using the exact language as contained in the constitution. The court further indicated that a manufacturer is one who "prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor, which he bestows on the raw material." City of New Orleans v. Ernst, 35 La. Ann. at 747. Again, the court clearly contemplated that a manufacturer's product would have a use.
Although the record reflects that Rollins did market and profit from its incineration process, we find that it is the actual incineration service that is being sold. At the time of trial, Rollins did not create a product from the incinerator ash that could be sold for use or sold as a component of another product which had a use. There is no dispute that Rollins' incineration process produced hazardous waste which was placed in a landfill.
When considering the goals sought to be accomplished by the ad valorem tax exemption, a manufacturer must be required to produce products suitable for use. Any other interpretation would frustrate the reason for the ad valorem tax exemption program. State and local economies are boosted when a manufacturer produces products which can be sold for use, thereby increasing revenue for the manufacturer, which translates into taxable profits, taxable income for employees, and sales taxes on the products manufactured. If a manufacturer only changes the shapes, qualities, or composition of something and the product is not suitable for use, this does not stimulate the economy in terms of providing other taxable sources. If the product is not suitable for use, the economy is not affected in a positive manner and alternative tax revenue opportunities do not exist. Therefore, we find the "suitable for use" requirement must apply whether a manufacturer is working raw materials into wares, or taking materials which have already gone through some artificial process and changing its shape, qualities, or composition.
We find the trial court did not err when it found that Rollins did not meet the constitutional definition of a manufacturing establishment. The record reflects that the incinerator ash produced by Rollins is not the product of a process which contemplates its use after incineration, nor does Rollins take any steps to make the incinerator ash marketable, which could be considered as evidence the incinerator ash had some use. Although the incineration process does change the hazardous waste into incinerator ash, because the ash is not "suitable for use," Rollins cannot be considered a manufacturing establishment according to the constitution.
By granting a facility that did not qualify as a manufacturing establishment an industrial ad valorem tax exemption, the Board clearly exceeded it constitutional authority. The decision of the trial court is affirmed.

Evidentiary Matters
Because our decision in this matter is based only on an examination of the constitutional provision, the purpose of the provision, and the factual testimony of what occurs during Rollins' incineration process, the issues raised by defendants regarding the relevance of some of the other testimony and evidence introduced in the trial court have no bearing on the outcome of this decision. In our review of the record, we do not question, nor do we see where the trial court questioned the testimony of Dale Scherger, the expert chemical engineer who explained the incineration process; thus, we do not address the issues raised by defendants pertaining to the admissibility and relevance of the SIC Code and Ms. Robinson's testimony.

Improper Use of Summary Proceedings
Further, defendants complain that this matter was an improper use of summary proceedings because the trial on the matter was held only three months after the suit was filed. Defendants assert they were prejudiced by not getting full and complete discovery. We note there is no dispute in the record of the physical process which takes place in Rollins' incinerator. As previously explained, the outcome of this case is one of constitutional interpretation, and as we and the trial court have both accepted Rollins' presentation of the incineration process, we *585 do not find the defendants were prejudiced by the rapidity of the proceedings. Thus, the exceptions of improper use of summary proceedings and issues regarding discovery need not be addressed.

CONCLUSION
Based on the foregoing reasons, we affirm the judgment of the trial court that Rollins is not a manufacturing establishment under the definition found in Article VII, § 21(F) of the Louisiana Constitution. Costs of the appeal in the amount of $2,865.82 are assessed equally against defendants, Louisiana Board of Commerce and Industry and Rollins Environmental Services, Inc.
AFFIRMED.
SHORTESS, C.J., dissents with reasons.
SHORTESS, C.J., Dissenting.
I respectfully dissent from the majority's holding that the trial court had subject matter jurisdiction in this case. In my opinion it did not.
Subject matter jurisdiction is conferred by the Louisiana Constitution.[1] Article V, section 16, of the Constitution vests Louisiana district courts with original jurisdiction over all "civil and criminal matters," except as otherwise authorized by the Constitution.
But what is a "civil matter" under article V, section 16? In Moore v. Roemer[2] and in Matter of American Waste & Pollution Control Co.,[3] our supreme court held that if a suit was one that was traditionally brought before the district court, it would be considered a civil matter over which district courts have jurisdiction. In Moore, the supreme court found that workers' compensation claims were traditionally brought before the district court and thus were civil matters. On the other hand, the supreme court found in American Waste that a cause of action regarding the issuance of permits for the regulation and control of waste disposal and water pollution had traditionally been a function of the executive branch of government and was unknown in the district court's original jurisdiction.
This court addressed the question of appellate jurisdiction of the district court over decisions of the Louisiana Board of Commerce and Industry (the Board) regarding ad valorem tax exemptions in Boeing Company v. Louisiana Department of Economic Development.[4] We found the regulation and control of ad valorem tax exemptions, constitutionally delegated to the Board and the governor, are traditionally and historically matters handled by the executive branch and thus are not civil matters within the meaning of Louisiana Constitution article V, section 16(A).[5]
Plaintiffs, however, rely on the court's statement in Boeing that the right of judicial scrutiny exists when there is a claim of deprivation of a constitutionally-protected right, the assertion that the agency action exceeded constitutional authority, or an allegation that the action of an administrative agency exceeded its legislative grant of authority.[6] Plaintiffs allege in their petition that the Board "exceeded its constitutional authority in authorizing, proposing to authorize, or enter into" the contract for ad valorem tax exemption because Rollins was "not authorized to receive an industrial tax exemption under the Louisiana Constitution ." They contend this allegation is sufficient to bring this action within the district court's original jurisdiction. The district court agreed, citing Boeing.
Despite the artful wording of their petition, plaintiffs' suit is nothing more than an attempt to have the district court overrule the decision of the Board on whether to grant an ad valorem tax exemption. In Boeing, the court looked at the subject matter of the suit "[i]rrespective of the parties' classification."[7] *586 The Board is authorized by the Louisiana Constitution, article VII, section 21(F), to "enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state." This broad grant of authority gives the Board great latitude in making decisions on whether to grant a tax exemption.[8] The decision in this case to grant the exemption to Rollins was within the Board's constitutional authority, and thus the district court had no subject matter jurisdiction.
I respectfully dissent.
NOTES
[1] Star Enterprise v. State, 95-1980, p. 11 (La.App. 1st Cir.6/28/96), 676 So.2d 827, 833, writ denied, 96-1983 (La.3/14/97), 689 So.2d 1383.
[2] 567 So.2d 75 (La.1990).
[3] 588 So.2d 367 (La.1991).
[4] 94-0971 (La.App. 1st Cir.6/23/95), 657 So.2d 652.
[5] Id. at pg. 12, 657 So.2d at 659.
[6] Id. at p. 8, 657 So.2d at 657.
[7] Id. at p. 12, 657 So.2d at 659.
[8] Id. at p. 11, 657 So.2d at 659.