991 So.2d 511 (2008)
BUNGE NORTH AMERICA, INC.
v.
The BOARD OF COMMERCE & INDUSTRY AND LOUISIANA DEPARTMENT OF ECONOMIC DEVELOPMENT.
Clyde A. "Rock" Gisclair, Assessor for St. Charles Parish, and Clyde A. "Rock" Gisclair, Individually
v.
The Board of Commerce and Industry, Louisiana Department of Economic Development, Louisiana Tax Commission, and Bunge North America, Inc. and
Bunge North America, Inc.
v.
The Board of Commerce & Industry and Louisiana Department of Economic Development.
Clyde A. "Rock" Gisclair, Assessor for St. Charles Parish, and Clyde A. "Rock" Gisclair, Individually
v.
The Board of Commerce and Industry, Louisiana Department of Economic Development, Louisiana Tax Commission, and Bunge North America, Inc.
Nos. 2007 CA 1746, 2007 CA 1747, 2007 CW 1705.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
*514 Robert L. Rieger, Jr., Richard B. Easterling, Stacey L. Greaud, William D. Shea, David K. McCrory, Baton Rouge, LA, for Appellant, Bunge North America, Inc.
William W. Edelman, Metairie, LA, and Victor E. Bradley, Jr., Norco, LA, for Appellee, Clyde A. "Rock" Gisclair, St. Charles Parish Assessor.
Daryl K. Manning, Baton Rouge, LA, for Appellee, La. Board of Commerce and Industry and La. Department of Economic Development.
Kenneth F. Sills, Baton Rouge, LA, and Robert L. Raymond, Destrehan, LA, for Appellee, Intervenor, St. Charles Parish School Board.
Robert D. Hoffman, Jr., Mandeville, LA, and Don Anthony Almerico, St. Rose, LA, for Appellee, La. Tax Commission.
Before CARTER, C.J., PETTIGREW and WELCH, JJ.
WELCH, J.
This case involves a dispute over an industrial ad valorem tax exemption granted to Bunge North America, Inc. ("Bunge") by the State of Louisiana *515 ("State") through the Department of Economic Development ("Department"), Board of Commerce and Industry ("Board"). Clyde A. "Rock" Gisclair ("Gisclair"), individually and as the duly elected Assessor for the Parish of St. Charles, appeals a summary judgment granted in favor of Bunge dismissing Gisclair's suit to nullify the industrial tax exemption contract. A supervisory writ application filed by Gisclair seeking review of the trial court's denial of his cross-motion for summary judgment was also referred to this panel. Additionally, Bunge has appealed an interlocutory judgment overruling its peremptory and declinatory exceptions. For the reasons that follow, we affirm the judgment overruling the peremptory and declinatory exceptions, affirm the summary judgment dismissing Gisclair's suit, and deny Gisclair's supervisory writ application.

I. FACTUAL AND PROCEDURAL HISTORY
As an inducement for manufacturers to build new manufacturing plants or to build additions to existing manufacturing plants in Louisiana, Article VII, Section 21(F) of the Louisiana Constitution, authorizes the State and the Board, with the approval of the governor, to exempt new manufacturing establishments or additions to existing manufacturing establishments from ad valorem taxes on such terms as the Board deems in the best interest of the State. The exemption is evidenced by a written contract that is signed by the governor, the Board, and the manufacturer. "Manufacturing establishment" and "addition to an existing manufacturing established" as used in La. Const. art. VII, § 21(F) "means a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process." La. Const. Art. VII, § 21(F).[1]
Bunge is a supplier of agricultural commodities, together with value-added specialized food, food products, and feed ingredients. Bunge operates a soybean processing facility and a grain export elevator in Destrehan, Louisiana ("Bunge's Destrehan establishment"). The soybean processing facility engages in manufacturing; however, the grain export elevator *516 does not.[2] In March 2002, Bunge sent an application to the Board for an industrial ad valorem tax exemption in connection with its plans for the construction of a new continuous barge unloader ("CBU") and related equipment at Bunge's Destrehan establishment. According to Bunge's application, the CBU was constructed as an addition to its existing plant to expand Bunge's ability to unload soybeans and other grains. Bunge's application specifically claimed that the CBU was "critical to [its] soybean processing operation" and did not "increase grain elevator storage or shipping capacity." The Board sent notice to Bunge, Gisclair, and other parties that it was considering Bunge's application. Following an investigation, on May 24, 2002, the Board and the State, with the approval of then Governor Murphy J. Foster, Jr., entered into tax exemption contract number XXXX-XXXX with Bunge ("the contract"), thereby exempting Bunge from ad valorem taxes for a period of five years.
Specifically, the contract provided, in pertinent part, as follows:
WHEREAS, [Bunge] its manufacturing establishment in the State of Louisiana, and the creation and operation of the said addition has been deemed by the Board to be of great benefit to the State and its inhabitants....
AND, WHEREAS, [Bunge] has demonstrated to the satisfaction of the Board that the said manufacturing establishment is eligible to be considered for tax exemption under [La. Const. art. VII, § 21(F)];
....
AND, WHEREAS, all requirements of law on behalf of [Bunge] have been complied with, and the Governor and the Board deem this contract to be in the best interest of the State; now, therefore, the parties hereto do mutually covenant and agree as follows:
....
[Bunge] has constructed at an approximate cost of $29,528,455.00, an addition to their manufacturing establishment.
Said establishment is located at 12442 River Road, Destrehan, in St. Charles Parish, Louisiana, and shall consist of building, equipment and machinery comprising said establishment.
In accordance with the contract, in August 2002, the Louisiana Tax Commission ("LTC") directed Gisclair to remove the machinery, equipment, and other property exempted under the contract from the assessment rolls for St. Charles Parish. Thereafter, pursuant to a request by Gisclair, the Board inspected Bunge's premises and found that approximately 24.9% of the CBU's operations were dedicated to Bunge's soybean processing operations and that the remainder of the CBU's operations involved unloading grains destined for Bunge's grain elevators. The Board then took the position that the exemption granted by the contract was subject to a decrease (or that only 24.9% of the estimated cost of the CBU would be eligible for the exemption) because some of the machinery, equipment, and/or property exempted under the contract were not engaged in manufacturing.
On June 23, 2003, Bunge filed suit against the Board and the Department seeking a declaratory judgment of its rights under the contract and challenging the Board and/or the Department's ability to restrict, alter, or modify the terms of *517 the contract ("Bunge's suit").[3] On July 23, 2003, the Board and the Department filed an answer and reconventional demand claiming that the contract was in violation of La. Const. art. VII, § 21(F) because the grain elevator was not engaged in manufacturing and, therefore, requested that the contract be declared invalid, null, and of no effect.
However, prior to the filing of Bunge's suit, the LTC had issued change order 403 ("change order 403"), which added the value of the machinery, equipment, and/or property exempt under the contract to the assessment roll for St. Charles Parish in the name of Bunge. As a result of change order 403, Gisclair issued a Tax Notice to Bunge in the amount of $451,413.04 with the taxes reflected thereon due by August 6, 2003. Therefore, on August 5, 2003, Bunge filed its first supplemental and amended petition in which Bunge added the LTC and its individual commissioners (in their official capacities) as defendants and requested the issuance of a temporary restraining order and preliminary injunction prohibiting the defendants from taking any action with regard to change order 403 or from otherwise modifying, altering, or restricting the contract through change order 403. On August 6, 2003, the trial court granted the restraining order as requested, and on August 15, 2003, all parties agreed to an order extending the temporary restraining order to maintain the "status quo" until judgment was rendered on Bunge's petitions.
On August 12, 2003, Gisclair, individually and in his capacity as the duly elected Assessor for the Parish of St. Charles, filed suit challenging the legality of the tax exemption granted in favor of Bunge ("Gisclair's suit"). Gisclair alleged that the Board exceeded its constitutional authority when it granted an industrial ad valorem tax exemption to Bunge through the contract and that the LTC had acted arbitrarily and capriciously when it directed Gisclair to remove certain machinery in the contract from the assessment rolls for St. Charles Parish. Gisclair requested that the trial court: (1) declare that the issuance of the contract to Bunge was an improper act of the Board in violation of the Louisiana Constitution, and therefore, the contract was void; and (2) direct the LTC to enable Gisclair to place Bunge's machinery, equipment, and other property listed in the contract on the assessment rolls for St. Charles Parish.
On August 19, 2003, Gisclair issued to Bunge a notice of assessment for estimated taxes for 2003, which included the value of property exempt from taxation under the contract. As a result, on September 8, 2003, Bunge filed a second supplemental and amended petition, adding Gisclair as a defendant in the original suit, requesting a preliminary injunction enjoining Gisclair from issuing assessments for property exempt under the contract, and requesting a judgment declaring the action taken by Gisclair was void. Additionally, Bunge requested an injunction compelling Gisclair to remove all property exempt from taxation under the contract from the assessment rolls for St. Charles Parish. That same date, Bunge sought and was granted a temporary restraining order enjoining Gisclair from modifying or altering the contract and attempting to assess any property exempt from taxation under the *518 contract. On October 16, 2003, Bunge was granted a preliminary injunction ordering Gisclair to rescind the August 19, 2003 assessment notice and enjoining him from taking any action relative to the assessment of taxes against Bunge for property exempt under the contract. Thereafter, Gisclair's suit was transferred and consolidated with Bunge's suit.
The St. Charles Parish School Board ("School Board"), St. Charles Parish ("the Parish"), and Gregory Champagne, in his capacity as duly elected Sheriff and Ex-Officio Tax Collector of St. Charles Parish ("the Sheriff"), filed petitions of intervention essentially adopting all of the allegations made by Gisclair in his suit. In response to Gisclair's suit and the interventions, Bunge filed a declinatory exception raising the objection of lack of subject matter jurisdiction; dilatory exceptions raising the objections of improper cumulation of actions, vagueness, and prematurity; and peremptory exceptions raising the objections of no cause of action, no right of action, and prescription. On June 11, 2004, the trial court rendered and signed a judgment overruling all exceptions filed by Bunge.
After the parties conducted extensive discovery, Gisclair filed a motion for summary judgment seeking nullification of the exemption contract and an order mandating that Bunge pay ad valorem taxes. Specifically, Gisclair argued that, in applying for a tax exemption, Bunge made material misrepresentations to the Board that the CBU was an addition to its soybean plant when, in actuality, the CBU constituted part and parcel of the grain elevator. Gisclair further argued that the grain elevator is a transportation and storage facility and not a manufacturing facility like the soybean plant. As such, Gisclair contended that the CBU neither constitutes a "new manufacturing establishment" nor an "addition to an existing manufacturing establishment;" and therefore, it was not subject to tax exemption under La. Const. art. VII, § 21(F). In response, Bunge filed a cross-motion for summary judgment, seeking the dismissal of Gisclair's claims and the claims of all intervenors.
The cross-motions for summary judgment were considered concurrently at a hearing on May 7, 2007, at which time the trial court granted summary judgment in favor of Bunge and denied the motion of Gisclair. A written judgment in conformity with the trial court's ruling, dismissing the petitions of Gisclair, the School Board, the Parish, and the Sheriff, was signed on June 11, 2007. From this judgment Gisclair has appealed, seeking review of the grant of Bunge's motion for summary judgment. Gisclair has also filed a supervisory writ application, seeking review of the denial of his motion for summary judgment, the merits of which have been referred to this panel. Additionally, Bunge has appealed the June 11, 2004 interlocutory judgment overruling its peremptory and declinatory exceptions.[4]

II. LAW AND DISCUSSION

A. Exceptions Raised by Bunge

1. Peremptory Exceptions

a. No Cause of Action
In Bunge's peremptory exception raising the objection of no cause of action, it *519 makes three arguments. First, Bunge claims that Gisclair does not have a cause of action, either in his individual capacity or in his official capacity, because the contract is a "constitutional contract" and La. Const. art. VII, § 21(F) specifically orders Gisclair not to collect taxes thereon during the period of the exemption. Therefore, Bunge contends any action taken by Gisclair to collect taxes would be illegal and unconstitutional, and any action to cause the contract to be re-opened or to cause the LTC to add the exempted property to the assessment rolls for St. Charles Parish for taxes to be collected thereon would be equally illegal and unconstitutional.
Second, Bunge contends that Gisclair should be estopped from bringing his suit because he received notice of Bunge's application for the exemption and had an opportunity to contest the exemption during hearings conducted by the Board (or the LTC), but he failed to do so. Therefore, Bunge contends that Gisclair's silence and inaction in the proceedings before the Board constituted a waiver of any cause of action he would have had to challenge the exemption.
Lastly, Bunge contends that Gisclair has no cause of action for a writ of mandamus to direct the LTC to enable Gisclair to place Bunge's exempt property listed in the contract on the assessment rolls for St. Charles Parish because the requested action is a discretionary act of the LTC.
Gisclair contends that he has stated a cause of action against Bunge because a cause of action exists where a claim is made that the Board exceeded its authority in granting an ad valorem tax exemption for a facility that was not a manufacturing establishment under Robinson v. Ieyoub, 97-2204, p. 3 (La.App. 1st Cir.12/28/98), 727 So.2d 579, 581, writs denied, 99-0933, 99-0981 (La.9/17/99), 747 So.2d 1096 and 1097. Gisclair also contends that he is not estopped from challenging the validity of the contact and that he has properly filed a mandamus to compel the LTC to act because the duty to properly determine the value of the taxable property is a mandatory ministerial duty.
After considering the applicable law and accepting all of the well-pleaded allegations of fact in Gisclair's petition as true, the trial court found that Gisclair properly asserted a cause of action. Therefore, the trial court overruled Bunge's peremptory exception raising the objection of no cause of action.
In reviewing a trial court's ruling on an exception of no cause of action, the appellate court should subject the case to de novo review because the exception raises a question of law, and the trial court's decision is based only on the sufficiency of the petition. Fink v. Bryant, XXXX-XXXX, p. 4 (La.11/28/01), 801 So.2d 346, 349. The peremptory exception raising the objection of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Fink, XXXX-XXXX at p. 3, 801 So.2d at 348-349. The function of the objection of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Fink, XXXX-XXXX at p. 3, 801 So.2d at 348. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. Fink, XXXX-XXXX at pp. 3-4, 801 So.2d at 349. The exception is triable on the face of the papers, and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Fink, XXXX-XXXX at p. 4, 801 So.2d at 349. A petition should not be dismissed for failure to state a cause of *520 action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim. Id.
After reviewing Gisclair's petition and accepting all of his allegations as true for purposes of the exception raising the objection of no cause of action, we agree with the trial court and find that Gisclair has stated a cause of action. In Robinson, the plaintiff taxpayers filed suit contesting the legality of an industrial tax exemption granted under La. Const. art. VII, § 21(F) by the Board for a hazardous waste incinerator that was to be built by Rollins Environmental Services, Inc. ("Rollins"). Specifically, the plaintiffs' petition alleged that the Board "exceeded its constitutional authority in authorizing, proposing to authorize, or enter into" the contract for an ad valorem tax exemption since Rollins was "not authorized to receive an industrial tax exemption under the Louisiana Constitution" because it was not a manufacturing establishment according to the constitutional definition. Robinson, 97-2204 at p. 3, 727 So.2d at 581, The trial court determined that Rollins was not a manufacturing establishment under the definition found in La. Const. art. VII, § 21(F). This court affirmed the trial court's judgment and concluded that by granting an ad valorem tax exemption to a facility that did not qualify as a manufacturing establishment, the Board had clearly exceeded its constitutional authority. Robinson, 97-2204 at p. 8, 727 So.2d at 584.
Implicit in this court's decision in Robinson is that the plaintiffs had stated a valid cause of action challenging the Board's decision to grant the industrial tax exemption. Likewise, in this case, Gisclair seeks to set aside the contract granted by the Board on the basis that the exemption was granted for the CBU, which was not an addition to a manufacturing establishment under the definition found in La. Const. art. VII, § 21(F). Therefore, we find that Gisclair has stated a cause of action challenging the Board's decision to grant the industrial tax exemption.
We likewise find no merit in Bunge's assertions that Gisclair should be estopped from challenging the constitutionality of the contract. The doctrine of equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied on such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Dupont v. Hebert, 2006-2334, p. 7 (La.App. 1st Cir.2/20/08), 984 So.2d 800, 806. Founded on good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. Id. Estoppel is not favored in Louisiana law. May v. Harris Management Corporation, 2004-2657, p. 6 (La.App. 1st Cir.12/22/05), 928 So.2d 140, 145.
Bunge contends that since Gisclair received notice from the Board that it had received Bunge's application for the industrial tax exemption and was considering the application, he should have urged his complaints about the legality of the proposed tax exemption during the proceedings before the Board and the LTC, and not having done so, it is too late for him to now complain since the contract has been executed and signed. However, we do not find that his silence or failure to act amounted to a waiver of his right to subsequently challenge the contract as being in violation of La. Const. art. VII, § 21(F) or that he should now be estopped from making such a challenge. Gisclair could not have known in advance whether the proposed industrial ad valorem tax exemption *521 would have been granted by the Board. If it had been rejected by the Board, the question of whether it was constitutional would not even be an issue. And, if Gisclair's allegations regarding an ad valorem tax exemption being granted for machinery, equipment, and/or property that was not an addition to a manufacturing establishment are accepted as true, then the Board violated the constitution in granting the exemption and in signing the contract. Estoppel cannot be invoked to validate a proceeding (or a contract) which is invalid per se. See generally Graham v. Jones, 198 La. 507, 567, 3 So.2d 761, 781 (1941). By remaining passive until the contract had been executed, Gisclair did not waive the right or become estopped from maintaining an action to challenge the validity, legality, or constitutionality of the contract. See Graham, 198 La. at 567-568, 3 So.2d at 781.
Moreover, as previously stated, estoppel requires "another who has justifiably relied on such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." Dupont, 2006-2334 at p. 7, 984 So.2d at 806. In order for estoppel to be applicable to Gisclair's action, as suggested by Bunge, Bunge had to justifiably rely on Gisclair's conduct (i.e., his silence or inaction in proceedings before the Board and LTC) and change its position so that it would suffer injury if Gisclair was allowed to act contrarily to his prior silence. We find the record devoid of any factual allegations or evidence establishing that Bunge relied on the failure of Gisclair to object to the tax exemption before the Board approved the exemption or that Bunge changed its position as a result of that silence. Rather, it appears, based on Bunge's application for the exemption, the contract, and other documents attached to the petition, that the CBU was actually constructed before the Board reviewed Bunge's request for the tax exemption. Thus, any silence or inaction by Gisclair before the Board or the LTC had no effect on any decisions made by Bunge with regard to the planning or building of the CBU.
Lastly, we find that Gisclair has stated a cause of action to direct the LTC to enable Gisclair to place Bunge's exempt machinery or property list in the contract on the assessment rolls for St. Charles Parish, Louisiana Code of Civil Procedure article 3863 provides that a writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. Generally, a writ of mandamus is improper to force a public official or body to do an act that is discretionary. Therefore, in this case, the question is whether the performance sought by Gisclair in his suit is of a ministerial duty required by law.
In Gisclair's petition, he asks the trial court "to direct the LTC to take such measures as will enable [Gisclair], Assessor [f]or St. Charles Parish, to place the machinery, equipment and other property of Bunge listed in [the contract] on the [assessment] rolls for St. Charles Parish and enable it to be subjected to [ad valorem] taxation by St. Charles Parish and its various taxing bodies." The duty to properly determine the value of taxable property is a mandatory ministerial duty of the LTC. See Bussie v. Long, 257 La. 623, 629-630, 243 So.2d 776, 778 (1971). In the event the contract is nullified, Bunge's property must be properly assessed and taxed. Therefore, we find that a writ of mandamus is a proper remedy under La. C.C.P. art. 3863 to compel the LTC to properly determine the value of Bunge's taxable property.
Accordingly, for all of the above reasons, we find that Gisclair has stated a valid *522 cause of action and that the trial court properly overruled Bunge's peremptory exception raising the objection of no cause of action.
This assignment of error is without merit.

b. No Right of Action
In Bunge's peremptory exception raising the objection of no right of action, it claims that Gisclair, either in his official capacity as the duly elected Assessor for St. Charles Parish or in his individual capacity as a private citizen, has no right of action to request a declaratory judgment regarding the validity of the contract or to seek a writ of mandamus because he does not have a special interest separate and distinct from that of the public at large. Bunge also contends that all of the allegations made by Gisclair in his official capacity regarding the constitutionality of the contract should be dismissed because the Louisiana Constitution protects only the rights of persons and does not protect government entities, such as the assessor, against government action.
Gisclair contends that he has a right, both as an individual taxpayer and as the Assessor for St. Charles Parish, to bring this suit. As a taxpayer, Gisclair contends that he has standing because he will have an increased tax liability as a result of the exemption granted to Bunge through the contract. Gisclair further argues that as assessor he has a special interest in this suit, because his office is funded through a special assessment district established pursuant to La. R.S. 47:1925.1-47:1925.7 and would be the direct recipient of a specific millage in all ad valorem taxes collected from Bunge on the CBU.
After considering the applicable law, the trial court agreed with Gisclair and determined that as a taxpayer Gisclair had a right of action to seek the annulment of a contract that has been (allegedly) unconstitutionally confected and to restrain his public servants from violating the constitution. The trial court further determined that as assessor, Gisclair had standing to bring a declaratory judgment seeking a declaration of the unconstitutionality of the contact, which operates to reduce the ad valorem taxes collected in his district. Lastly, the trial court concluded that as assessor, Gisclair had a right to bring this suit that was separate and distinct from the public at large because he depends on ad valorem taxes collected for his pay and/or expenses. Therefore, the trial court overruled Bunge's peremptory exception raising the objection of no right of action.
Trial court rulings on peremptory exceptions raising the objection of no right of action are reviewed de novo on appeal because they involve questions of law. See In re Succession of Jones, XXXX-XXXX, p. 3 (La.App. 1st Cir.11/7/03), 868 So.2d 54, 55. Generally, an action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception raising the objection of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. See La. C.C.P. art. 927(A)(5). The function of the objection of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n., 94-2015, p. 4 (La.11/30/94), 646 So.2d 885, 888. The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Id. The party raising a peremptory exception *523 bears the burden of proof. Falcon v. Town of Berwick, XXXX-XXXX, p. 3 (La.App. 1st Cir.6/25/04), 885 So.2d 1222, 1224.
Our jurisprudence recognizes the right of a taxpayer to seek judicial review, including the annulment of a contract, of acts of public servants that are alleged to have been contrary to law, unconstitutional, or illegally confected. Roussel v. Noe, 274 So.2d 205, 210 (La. App. 1st Cir.), writ refused, 281 So.2d 743 (La.1973). Our jurisprudence also recognizes the right of a taxpayer to enjoin unlawful action by a public body. Robinson, 97-2204 at p. 3, 727 So.2d at 581. Under Louisiana law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode that would increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Robinson, 97-2204 at pp. 3-4, 727 So.2d at 582; Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1357 (La. 1991). The fact that the taxpayer's interest may be small and insusceptible of accurate determination is not sufficient to deprive him of that right. Louisiana Associated General Contractors, 586 So.2d at XXXX-XXXX.
With these precepts in mind, we do not find error in the trial court's determination that Gisclair had standing and a right of action, individually, to bring his suit. The record reflects that Gisclair is in fact a member of the St. Charles Parish community that would benefit from the payment of ad valorem taxes by Bunge.
Furthermore, we do not find that the trial court erred in its determination that Gisclair had standing and a right of action in his official capacity as the duly elected Assessor for the Parish of St. Charles. As Gisclair points out, the Office of the St. Charles Parish Assessor is funded through a special assessment district established pursuant to La. R.S. 47:1925.1-47:1925.7. Louisiana Revised Statutes 47:1925.2 specifically establishes, among others, the St. Charles Parish assessment district. Louisiana Revised Statutes 47:1925.6 provides that "[a]ll funds collected by the special [assessment] district shall be paid into the assessor's salary and expense fund, which shall be disbursed by the assessor in accordance with law."
In Wooden v. Louisiana State Tax Com'n, 94-2481 (La.2/20/95), 650 So.2d 1157, 1160, the supreme court upheld the standing (or right of action) of the Morehouse Parish assessor to advance and pursue a challenge to the constitutionality of a statute that adversely affected the ad valorem tax collections in Morehouse Parish. Like Gisclair, the Morehouse Parish assessor benefited from a special assessment district established under La. R.S. 47:1925.1-47:1925.7. The Morehouse Parish assessor was challenging the constitutionality of a statute providing, that for homestead exemption purposes, a buyer of a "bond for deed" contract[5] was deemed to own any immovable property purchased and occupied under the bond for deed and, therefore (if otherwise qualified), was eligible for the ad valorem homestead tax exemption.
In concluding that the Morehouse Parish assessor had standing to challenge the statute because his office suffered a direct loss of tax revenues since the exemption diminished the tax revenues collectible by *524 the assessor's office, the supreme court reasoned:
The tax assessment district in the present case had a significant real and actual interest in maximizing the collection of ad valorem taxes on all taxable property in the parish. The assessor, as chief executive officer of the district, clearly had standing to bring a declaratory judgment action seeking a declaration of the constitutionality of La.Rev. Stat. 9:2948, which operated to reduce the ad valorem taxes collected in Morehouse Parish.
Wooden, 94-2481 at p. 7, 650 So.2d at 1160.
Under this reasoning, we find that Gisclair has standing, in his official capacity as duly elected Assessor for the Parish of St. Charles, to challenge the constitutionality of a contract that adversely affects the ad valorem tax collections in St. Charles Parish. The St. Charles Parish assessment district is a tax recipient of a specific millage in all ad valorem tax collections in the parish, including those that would be collected from Bunge on the CBU should the contract be nullified, and those taxes are used for the purpose of financing the St. Charles Parish Assessor's Office operations. See La. R.S. 47:1925.7. As chief executive officer of that tax receiving body, Gisclair has standing to bring a declaratory judgment action on behalf of the district. See La. R.S. 47:1925.2(A)(2).
Accordingly, we find that Gisclair has demonstrated a sufficient interest, both in his individual capacity and in his official capacity, to sustain his action. Therefore, the trial court properly overruled Bunge's peremptory exception raising the objection of no right of action.
This assignment of error is without merit.

c. Prescription
In Bunge's peremptory exception raising the objection of prescription, it argues that Gisclair's suit against Bunge alleges injuries based on tortious conduct by Bunge and is subject to the one-year prescriptive period for delictual actions in accordance with La. C.C. art. 3492. Bunge further submits that since the contract between Bunge and the Board and Department was entered into on May 16, 2002, but Gisclair's suit was not filed until August 12, 2003more than one year from the date of the contractGisclair's suit is prescribed and should be dismissed.
However, Gisclair contends that his suit seeks annulment of a contract and is, therefore, either not subject to a prescriptive period or subject to the five-year prescriptive period set forth in La. C.C. art. 2032. Louisiana Civil Code article 2032 provides that an "[a]ction for annulment of an absolutely null contract does not prescribe" and that the "[a]ction of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased... or was discovered, as in the case of error or fraud."
After reviewing Gisclair's petition, the trial court noted that Gisclair's claims were based upon his contention that the contract was in violation of the Louisiana Constitution because the exemption was not granted for an "addition to a manufacturing establishment" and concluded that the relief ultimately sought by Gisclair was the nullification of the contract. The trial court noted that regardless of whether Gisclair was claiming that the contract was absolutely null or relatively null, under either theory, his suit was brought timely under La. C.C. art. 2032. Therefore, the trial court overruled Bunge's peremptory exception raising the objection of prescription. Based on our *525 review of the petition in this matter, we find no error in the trial court's conclusion that Gisclair's suit sought nullification of a contract. Gisclair specifically requested, in paragraph 19 of his original petition, that the trial court issue and enter a declaratory judgment declaring the contract to be improper, an arbitrary and capricious act by the Board, in violation of La. Const. art. VII, § 21(F) and, therefore, void from inception. Accordingly, Gisclair's suit filed on August 12, 2003, was timely under La. C.C. art. 2032, and the trial court properly overruled Bunge's peremptory exception raising the exception of prescription.
This assignment of error is also without merit.

2. Declinatory Exception Raising the Objection of Lack of Subject Matter Jurisdiction
In Bunge's declinatory exception raising the objection of lack of subject matter jurisdiction, it contends that the trial court has no authority over the regulation and control of ad valorem tax exemptions because such matters have been constitutionally delegated to the Board and the governor. In support of its position in this regard, Bunge cites Boeing Co. v. Louisiana Dept. of Economic Development, 94-0971 (La.App. 1st Cir.6/23/95), 657 So.2d 652. Bunge further contends that the trial court lacked subject matter jurisdiction because there is no justiciable controversy between Gisclair, the Board, the LTC, the Department, or Bunge until the LTC or the Board issues a change order or refuses to add the property back to the assessment rolls of St. Charles Parish and that all allegations directed at the correctness of granting the tax exemption should be reviewed by the LTC in accordance with the provisions set forth in La. R.S. 47:1989, et seq., before being subjected to judicial review.
On the other hand, Gisclair contends that the trial court has original subject matter jurisdiction to consider a claim, such as his, that the Board exceeded its authority in granting an ad valorem tax exemption for a facility that was not a manufacturing establishment and cites in support thereof Robinson. However, Bunge contends Robinson is distinguishable because it involved an ad valorem tax exemption contract that had not yet been approved by the governor, whereas in this case, the contract has already been approved by the governor. The trial court found, and we agree, that this distinction was a distinction without a difference. In doing so, the trial court noted that it was not the governor who makes the final decision on whether a contract entered into by the Board, a division of the executive branch, was constitutional but, rather, that it was the judicial branch that was charged with making such determination. The trial court further noted that to take the position urged by Bungethat the governor as the top executive of this state was essentially the only "check" of the actions of an executive boardwould render this state's "checks and balances" between the three branches of government meaningless. Therefore, the trial court overruled Bunge's declinatory exception raising the objection of lack of subject matter jurisdiction.
The Louisiana Constitution vests the district courts with original jurisdiction over all "civil and criminal matters" except as otherwise authorized by the constitution. La. Const. art. V, § 16(A). This court has previously found that the regulation and control of ad valorem tax exemptions were matters constitutionally delegated to the Board and the governor. As such, these matters were outside the subject matter jurisdiction of the district courts because they are matters traditionally *526 handled by the executive branch and were not considered "civil matters" within the grant of original jurisdiction by La. Const. art. V, § 16(A). See Boeing, 94-0971 at p. 12, 657 So.2d at 659.
However, the right to judicial scrutiny exists when there is a claim of deprivation of a constitutionally protected right, an assertion that an agency exceeded constitutional authority, or an allegation that an administrative agency exceeded its legislative grant of authority. Boeing, 94-0971 at p. 8, 657 So.2d at 657.
In this case, Gisclair specifically alleged that the Board "exceeded its constitutional authority and acted arbitrarily and capriciously when, it granted an industrial tax exemption for Bunge's installation of added machinery, equipment and other property [(the CBU)] at its Destrehan, Louisiana grain elevator and entered into [the contract]" because Bunge's grain elevator at Destrehan was not a manufacturing establishment according to the constitutional definition. The trial court determined that Gisclair's allegations that Bunge's grain elevator was not a manufacturing establishment according to the constitutional definition and that the Board had exceeded its authority in granting the ad valorem tax exemption were sufficient to bring the action within its original jurisdiction. We agree.
The allegation that the Board acted in an unconstitutional manner requires the decision regarding the tax exemption be re-examined. If the district courts do not have jurisdiction to review allegations of unconstitutional actions, there is no judicial review or recourse of any nature against unbridled abuse of power that exceeds constitutional authority. Robinson, 97-2204 at p. 3, 727 So.2d at 581. In this case, the allegation that the Board exceeded its constitutional authority by granting an exemption to Bunge requires this court to determine if the Board granted an exemption for machinery, equipment, and/or property that was not an addition to an existing manufacturing establishment. If so, then the Board exceeded its constitutional grant of authority. Thus, we find the trial court properly exercised subject matter jurisdiction in this matter and properly overruled Bunge's declinatory exception raising the objection of lack of subject matter jurisdiction.[6]
This assignment of error is likewise without merit.

B. Summary Judgment
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Granda v. State Farm Mutual Insurance Company, 2004-2012, p. 4 (La.App. 1st Cir.2/10/06), 935 So.2d 698, 701. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Id. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. Id. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and *527 that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the non-moving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). Failure to do so shows that there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
Louisiana Code of Civil Procedure articles 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, has no evidentiary value on a motion for summary judgment. Boland v. West Feliciana Parish Police Jury, XXXX-XXXX, pp. 5-6 (La. App. 1st Cir.6/25/04), 878 So.2d 808, 813, writ denied, 2004-2286 (La.11/24/04), 888 So.2d 231. Therefore, in meeting the burden of proof, unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does not transform such documents into competent summary judgment evidence. Williams v. Memorial Medical Center, XXXX-XXXX, pp. 14-15 (La.App. 4 th Cir. 3/17/04), 870 So.2d 1044, 1053, writ denied, XXXX-XXXX (La.6/4/04), 876 So.2d 93.
Gisclair's suit is premised on his contention that Bunge was not entitled to an ad valorem tax exemption under La. Const art. VII, § 21(F). Louisiana Constitution article VII, § 21(F) provides:
Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
....
(F) Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.
....
The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.
Because Gisclair seeks to annul an exemption contract that has already been granted, he will bear the burden of proof at trial. As we previously noted, Bunge's Destrehan establishment is comprised of a soybean processing facility (which engages in manufacturing) and a grain elevator (which does not engage in manufacturing). Notably, La. Const. art. VII, § 21(F) does not require that the plant or establishment seeking the exemption to be engaged exclusively in manufacturing or that the property ultimately exempt under such a contract be used exclusively in manufacturing. *528 Rather, this provision simply provides that the Board, with the approval of the governor, has the authority to grant an ad valorem tax exemption to any new plant or establishment or for any addition to an existing plant or establishment "which engages" in manufacturing. Therefore, Gisclair's burden of proof at trial is not, as he has suggested, to establish that the CBU was an addition to Bunge's grain elevator but, rather, that the CBU was not at all an "addition" to Bunge's "existing manufacturing establishment" (i.e., its soybean processing facility). In Bunge's motion for summary judgment, it contended that there was an absence of factual support for this essential element of its claim, and therefore, Bunge was entitled to summary judgment dismissing its claims.
Bunge submitted, in support of its motion for summary judgment (and in opposition to Gisclair's motion for summary judgment), the affidavits of Gregory L. Thebeau and Clair N. "CJ" Jones. Mr. Thebeau is employed by Bunge as its vice-president and assistant controller and is responsible for the administration of income tax and non-income tax in Canada, the United States, and Mexico. According to Mr. Thebeau, Bunge is a primary supplier of high quality agricultural commodities, value-added specialized food and feed ingredients, and food products in the global market place. According to Mr. Thebeau, Bunge's Destrehan establishment's integrated soybean processing and grain elevator functions help make Bunge the second largest soybean crusher in the United States. Mr. Thebeau explained that the terms "soybean processing division" and "grain division" at Bunge's Destrehan establishment are used by Bunge for internal purposes, and Bunge's Destrehan establishment is wholly owned and operated by Bunge, a single legal entity registered with the Louisiana Secretary of State as a corporation capable of doing business in the State of Louisiana. Additionally, he stated that neither the grain division nor the soybean processing division have registered with the Louisiana Secretary of State as a separate legal entity capable of doing business in Louisiana (or any other state) and, further, that Bunge files a unified Louisiana State Income Tax return that encompasses all of Bunge's Louisiana operations, including its Destrehan establishment.
Mr. Thebeau further stated that although the volume of grain unloaded by the CBU into the grain elevator exceeds the volume of soybeans unloaded by the CBU that are destined for the soybean processing facility, the margins yielded from soybean by-products substantially exceed those generated by whole grains exported from Bunge's Destrehan establishment.
Mr. Jones is employed by Bunge as administrative manager at Bunge's Destrehan establishment and serves as the contact person between Bunge's Destrehan establishment and various state and local officials, offices, agencies, boards, and commissions (including the Board, the Department, the LTC, the St. Charles Parish Economic Development Council, and Gisclair). Mr. Jones stated that, in 2002, construction of the CBU at Bunge's Destrehan establishment was completed. According to Mr. Jones, Bunge's Destrehan establishment's first priority is to keep the soybean processing facility running because Bunge incurs additional operation costs if the soybean processing facility is forced to shut-down. Mr. Jones explained that the soybean processing facility in Bunge's Destrehan establishment has historically (with a few market driven exceptions) operated twenty-four hours a day, seven days a week, and three-hundred and sixty five days a year.
*529 Mr. Jones stated that he was familiar with Bunge's application for the ad valorem tax exemption for the CBU and assisted with the negotiation and preparation of the contract with the Board for the exemption from ad valorem taxes of the CBU at Bunge's Destrehan establishment. Mr. Jones stated that the CBU covered by the contract was constructed to enhance Bunge's Destrehan establishment's ability to load combinations of soybean products and grains on ocean going vessels from one berth and that its ability to do so enhances the competitiveness and profitability of Bunge's Destrehan establishment. Mr. Jones further stated that when the CBU is not being utilized to unload soybeans destined for the soybean processing facility, the CBU is used to unload soybeans and other grains destined for export in its grain elevator. Mr. Jones explained that with the addition of the CBU, when storage capacity is reached, meal can be loaded onto barges for storage, thus enabling the soybean processing portion of Bunge's Destrehan establishment to continue its crushing. And further, when a vessel is ready for loading, the meal can be unloaded from the barges by the CBU and transferred into the vessel. Mr. Jones explained that prior to construction of the CBU, soybean processing would be interrupted when storage capacity was reached.
Mr. Jones further stated that the soybean processing portion of Bunge's Destrehan establishment cannot function without the CBU, and since 2003, the CBU has been the sole means by which soybeans are transferred from Mississippi river barges to the soybean processing facility, although Bunge has retained the old bucket unloader system for backup purposes. Mr. Jones explained that the vast majority of soybeans processed at Bunge's Destrehan establishment are unloaded from Mississippi River barges by the CBU and transferred to the soybean processing portion of Bunge's Destrehan establishment and that all machinery at Bunge's Destrehan establishment is utilized, at one time or another, for soybean processing (with the exception of a corn cracker that was added in 2006). Mr. Jones stated that Bunge's Destrehan establishment is unique and gives Bunge a substantial advantage over its global competitors because it can process raw soybeans into finished products, with the concomitant capability of directly loading these products onto ocean going vessels. Mr. Jones further stated that another advantage of Bunge's Destrehan establishment is that it enables Bunge to create a higher quality soybean by-product through the initial processing of soybeans taken from Mississippi River barges by the CBU because soybeans can be shipped from many origins up and down the Mississippi River to Bunge's Destrehan establishment, which allows soybeans of different qualities to be blended.
Mr. Jones also stated that the St. Charles Parish Tax Assessor has taxed Bunge's Destrehan establishment as a single establishment for the last 30 years and that all taxes charged to Bunge's Destrehan establishment are paid by Bunge, the sole legal entity responsible for the operations of Bunge's Destrehan establishment.
According to Bunge's application for the exemption,
the basis of [its] request [for the exemption], entails the building of a new enclosed [CBU] and the installation of related conveyors to convey products to the facility for processing and export. This new CBU should increase the facility's unloading capacity by an estimated 40 percent and the slower moving buckets and inclined conveyor system should reduce breakage when handling soybeans and other grains ... Grain storage *530 capacity and shipping capacity were not increased by this project ...
As outlined above and in the attached exhibits, Bunge's upgrade project is critical to our soybean processing operation and does not increase grain elevator storage or shipping capacity.
In opposition to Bunge's motion for summary judgment, Gisclair did not submit any affidavits, depositions, admissions, or interrogatories. Instead, Gisclair relied on documentary evidence received from Bunge pursuant to a request for production of documents. This documentary evidence consisted of Bunge's bid solicitation for the construction of the CBU, which described the CBU as a grain elevator upgrade, and various internal memoranda of Bunge that purportedly provide: that Bunge's grain division would be responsible for constructing and funding the CBU; that the proposal for the construction of the CBU was presented to Bunge's Board of Directors as an upgrade to the grain elevator; that the CBU would increase Bunge's Destrehan establishment's grain handling capacity and allow Bunge's Destrehan establishment to handle corn; that only a small percentage of the gram actually unloaded by the CBU would be subject to processing at the soybean processing facility; and that Bunge preferred to construct the CBU rather than have to utilize its competitors grain elevators.
Gisclair contends this documentary evidence establishes that the CBU was an addition to Bunge's grain elevator and, therefore, was not eligible for the exemption. Bunge contends that this evidence was not competent summary judgment evidence, and therefore, Gisclair was unable to establish that there were genuine issues of material fact. We agree. The documents submitted by Bunge were not affidavits or sworn to in any way, were not certified or attached to an affidavit and, therefore, had no evidentiary value on a motion for summary judgment See Boland, XXXX-XXXX, pp. 5-6, 878 So.2d at 813.
Nevertheless, assuming as Gisclair contends, that this documentary evidence establishes that the CBU was an addition to Bunge's grain elevator, such evidence does not negate or contradict Bunge's evidence establishing that the CBU was also an addition to its existing manufacturing establishment. As previously stated, La. Const art. VII, § 21(F) does not require that Bunge's property that is exempt under the contract be used exclusively in manufacturing. Although Bunge's CBU may be used for and has benefited Bunge's Destrehan establishment's non-manufacturing operations, Bunge's evidence establishes that the CBU was constructed to serve as an integral part of Bunge's soybean processing operations and was an "addition" to Bunge's "existing manufacturing establishment." Or in other words, as the trial court succinctly noted in its reasons for judgment, the CBU served a "dual purpose." Because this evidence is sufficient to point out an absence of factual support for Gisclair's claim that the CBU was not an addition to Bunge's existing manufacturing establishment, the burden then shifted to Gisclair to present competent summary judgment evidence demonstrating a genuine issue of material fact on this issue. We find that Gisclair failed to do so. Gisclair presented no competent summary judgment evidence to establish that he would be able to carry his evidentiary burden of proving at trial that the CBU was not at all an addition to Bunge's existing manufacturing establishment and, likewise, that he would be able to prove that Bunge was not entitled to an exemption. Therefore, the trial court properly granted summary *531 judgment in favor of Bunge, dismissing Gisclair's suit.
Moreover, for the same reason we find that the trial court correctly granted Bunge's motion for summary judgment, we also find that the trial court correctly denied Gisclair's motion for summary judgment. Gisclair claims that he was entitled to summary judgment because there was no genuine issues of material fact that the Board and State acted arbitrarily and capriciously when it approved and entered into the contract that provided an exemption from ad valorem taxes for Bunge's CBU because the CBU was an addition to Bunge's grain elevator. However, the evidence submitted by Gisclair in support of his own motion for summary judgment was the same evidence relied on by him in his opposition to Bunge's motion for summary judgment. We previously determined that such evidence was not of sufficient evidentiary quality to be given weight in determining whether there remain genuine issues of material fact. Unless the motion for summary judgment is properly supported, La. C.C.P. art. 967 does not shift the burden to the adverse party to set forth specific facts showing that there is a genuine issue of material fact for trial. Without appropriate supporting documentation, Gisclair failed to meet his burden on summary judgment, and the trial court correctly denied his motion.
Accordingly, we hereby affirm the trial court's June 11, 2007 judgment granting Bunge's motion for summary judgment and denying Gisclair's motion for summary judgment, and we deny Gisclair's supervisory writ application.

III. CONCLUSION
For all of the above and foregoing reasons, the June 11, 2004 interlocutory judgment overruling Bunge's peremptory and declinatory exceptions is hereby affirmed, and the June 11, 2007 judgment granting the motion for summary judgment filed by Bunge, denying the motion for summary judgment filed by Gisclair, and dismissing Gisclair's suit is hereby affirmed; and Gisclair's application for a supervisory writ is hereby denied.
All costs of this appeal in the amount of $6,232.00 are hereby assessed in equal amounts of $3,116.00 to the plaintiff/appellant, Clyde A. "Rock" Gisclair and to the defendant/appellant, Bunge North America, Inc.
JUNE 11, 2004 JUDGMENT AFFIRMED; JUNE 11, 2007 JUDGMENT AFFIRMED; WRIT DENIED.
NOTES
[1] The text of La. Const. art. VII, § 21(F) provides, in pertinent pan as follows:

Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
....
(F) Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.
The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.
The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.
[2] Bunge's grain elevator unloads grain from river barges. After the grain is unloaded and deposited into the grain elevator, it is weighed, cleaned, dried, and sometimes blended. The grain is then loaded onto ships for export to foreign destinations.
[3] Previously, in 1998, Bunge and the Board, with the approval of the governor, had entered into tax exemption contract number 970554 for the exemption from ad valorem taxes on a soybean-hull pelleting mill constructed by Bunge in St. Charles Parish, Louisiana, at a cost of approximately $1,041,823.00. In its suit for declaratory judgment against the Board and the Department, Bunge also sought declaratory relief with regard to tax exemption contract number 970554; however, no issues have been raised on this appeal with regard to that contract.
[4] A judgment overruling an exception is generally considered an interlocutory judgment and is not appealable. See La. C.C.P. arts. 1841 and 2083. However, in this case, we can consider the correctness of this interlocutory judgment in conjunction with the appeal of the summary judgment in favor of Bunge, which is a final and appealable judgment. See People of Living God v. Chantilly Corp., 251 La. 943, 947-948, 207 So.2d 752, 753 (1968).
[5] A "bond for deed" contract is defined in La. R.S. 9:2941 as a "contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer."
[6] We likewise find no merit to Bunge's assertion that Gisclair's allegations regarding the correctness of the exemption must be reviewed by the LTC in accordance with the provisions set forth in La. R.S. 47:1989, et seq. before being subjected to judicial review. Those provisions address the procedure to protest ad valorem tax assessments and the correctness of the value placed on property. Gisclair's suit is not a correctness challenge under La. R.S. 47:1989 because the values of the CBU and grain elevator are not at issue.