GUIDRY, J.
|2A homeowner appeals a judgment enjoining her from operating a business out of her home. While the appeal of this matter was pending, the homeowner filed a peremptory exception urging the objection of prescription with this court. For the following reasons, we overrule the exception and affirm the judgment appealed.
FACTS AND PROCEDURAL HISTORY
Bayou Terrace Estates is a subdivision located in Ascension Parish for which the Bayou Terrace Estates Home Owners Association, Inc. (“the Association”) was created pursuant to the Louisiana Homeowners Association Act, La. R.S. 9:1141.1-1141.9, to manage and regulate the residential planned community.[1] On July 12, 2010, the Association filed a petition for injunctive relief against Jessica Stuntz, a homeowner in the subdivision, to enforce a building restriction[2] that prohibits the *591 commercial use of lots contained in the subdivision. In the petition, the Association asserted that Ms. Stuntz operated a business known as “Ink Girl Studio” out of her home, by which she provided art lessons and painting parties for which she was paid. Pursuant to the petition filed by the Association, the trial court issued a temporary restraining order (TRO) ordering Mrs. Stuntz to “cease operation of the business known as Ink Girl Studio or any other commercial studio on the property located in Bayou Terrace Estates.” The trial court also set a date for a hearing on the issuance of a preliminary injunction, following which it held the matter should be set for a hearing for a permanent |,-¡injunction and the operation of the TRO was extended to the date of the hearing for the permanent injunction.
A hearing for permanent injunctive relief was set for October 22, 2010; however, prior to that date, the Association filed a joint motion for contempt and motion in limine against Mrs. Stuntz for her failure to comply with the TRO ordering her to stop the operation of her business in the subdivision and for her failure to provide certain discovery responses. Thereafter, Mrs. Stuntz filed an answer to the petition for injunctive relief and the matter proceeded to a bench trial, which convened on November 80, 2010. Following the hearing, the trial court ruled in favor of the Association, holding that the art lessons Mrs. Stuntz provided in her home is “a commercial enterprise” and immediately enjoined Mrs. Stuntz “from operating a commercial enterprise in her home at 18445 Bayou Terrace, St. Amant, Louisiana, in Bayou Terrace Estates.” The trial court declined to find Mrs. Stuntz in contempt, but left the petition open to allow the Association to re-urge contempt in the event Mrs. Stuntz continued to provide art lessons in her home.
It is from this judgment that Mrs. Stuntz appeals, and on appeal, Mrs. Stuntz has filed a peremptory exception urging the objection of prescription.
DISCUSSION
Subdivision restrictions governing the use and maintenance of lots contained within the Bayou Terrace Estates subdivision were first established by the contractor that created the subdivision, Achord Construction, Inc., in 1991. The original restrictions provided that the property comprising the subdivision could “be used only for residential and campsite purposes, all commercial or other activities incompatible with the same are prohibited.” Over the years, the restrictions were amended and restated, and in August 2006, four contiguous ^subdivisions combined, amended, and restated the restrictions to apply to all four of the subdivisions, including both filings of the Bayou Terrace Estates, in a document titled, “Amended Act of Restrictions for the Bayou Terrace Estates Subdivision, Bayou Terrace Estates Subdivision, Second Filing, Canal Bank Subdivision, First Filing, and Canal Bank Subdivision, Second Filing,” filed as Instrument #00645571 with the Ascension Parish Clerk of Court.
At issue in this appeal is the interpretation and application of restriction 5.1.1 under the section titled, “GENERAL COVENANTS, OBLIGATIONS AND RESTRICTIONS,” which provides:
Except as otherwise provided in paragraph 5.1.2 [relative to storage buildings, garages, and other out-buildings used for storage purposes], all Lots shall be used solely for single family residential purposes, and no more than one *592 single family residence shall be built upon any Lot. The use of a Lot for other forms of residential use or for commercial, institutional, medical, retail, religious or commercial storage uses of any kind is strictly prohibited. The foregoing shall not be interpreted to prohibit a personal office from being located within the residence.
On appeal, Mrs. Stuntz contends that the trial court erred in finding that the art lessons she gives are a commercial enterprise. As she argues in her brief, she is “carrying on her profession in her home and ... not operating a business, trade, industry, or commercial enterprise as generally understood.”
At trial, Mrs. Stuntz testified that she moved into the subdivision in October 2006, and that she provided art lessons in her home since moving into the subdivision. As she explained:
It’s no more than just a group. Art lessons, basically. Sometimes it’s a group of people that know each other and they’re actually celebrating something, like a birthday ... so we call it [a] painting party. It’s an art lesson done in a group form and they come, sometimes they come to me, sometimes I go to them, different locations.... [B]ut they can come and arrange by appointment. I walk them through, usually, is one painting. Like, they’re to choose a painting ahead of time that they want to try to do their own version of, and I help them do that.
|;;Mrs. Stuntz admitted that she is “compensated” for the lessons she provides, and explained that the amount she charges depends on what the person wants to paint, because she provides the supplies. So the larger the painting, the more supplies she must provide, such as a larger piece of canvas, which cost more. However, when asked if she were just selling the canvases and paint, Mrs. Stuntz replied, “I’m selling my services to teach art”; but included in the amount she charges are the costs of the art supplies. While Mrs. Stuntz at one point characterized the lessons she gives as “[i]t’s more like we have people over than it is a business,” she admitted the lessons are not a personal party that she and her husband give for people they know, but the lessons are “part of my income.”
At her art parties, Mrs. Stuntz testified that she could accommodate a group of up to sixteen people in her home, but on her website, she limits the groups to up to ten persons. She also stated that the lessons are open to the general public and that she does not have any restrictions on who she allows in her home for the lessons.
Building restrictions are charges imposed in pursuance of a general plan governing building standards, specified uses, and improvements and may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan. La. C.C. arts. 775 and 778. Generally, doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable. See La. C.C. art. 783. However, the provisions of the Louisiana Homeowners Association Act, La. R.S. 9:1141.1, et seq., supersede the Civil Code articles on building restrictions in the event of a conflict. La. C.C. art. 783. Regarding interpretation of building restrictions on property regulated by a homeowners association, La. R.S. 9:1141.4 provides that “[t]he existence, validity, or extent of a building restriction affecting any | ^association property shall be liberally construed to give effect to its purpose and intent.” Fern Creek Owners’ Association. Inc. v. City of Mandeville, 08-1694, p. 11 (La.App. 1st Cir.6/30/09), 21 So.3d 369, 377.
*593 While Mrs. Stuntz argues that the art lessons she provides are not in violation of restriction 5.1.1, the Association, as explained by the Board president, Frank Coates, takes a different position. Mr. Coates testified that the Board views restriction 5.1.1 as prohibiting “no commercial business being conducted out of a home, and that any services rendered at that home and someone paying for these services at that residence or location is strictly prohibited.” Additionally, Judy Grounds, who holds the position of treasurer with the Board, explained that Mrs. Stuntz’s activities violate restriction 5.1.1 because she has customers come to and performs services out of her home, as opposed to simply having a personal office that does not interfere with the operations of the subdivision.
Although personal office is not defined or described in the Association restrictions,[3] our review of cases involving similar restrictions on the commercial use of residential property reveals that mere administrative or managerial activities, or even insubstantial provision of services in the home, have been found not to violate the intent of such provisions. See Schwab v. Kelton, 405 So.2d 1239, 1245 (La.App. 1st Cir.), writ denied, 407 So.2d 749 (La.1981). Moreover, Mrs. Stuntz’s actions of providing art lessons in her home are clearly more analogous to those cases in which the activities of the homeowners were found to be in violation of “residential use only” restrictions. See Ellis v. Dearing, 435 So.2d 1107 (La.App. 1st Cir.), writ denied, 441 So.2d 765 (La.1983); Mulberry Association, Inc. v. Richards, 369 So.2d 185 (La.App. 4th Cir.), writ denied, 371 So.2d 1345 (La.1979);7 Oak Ridge Builders. Inc. v. Bryant, 252 So.2d 169 (La.App. 3d Cir.), writ denied, 259 La. 945, 253 So.2d 384 (1971); Woolley v. Cinquigranna, 188 So.2d 701 (La.App. 4th Cir.1966).
The issuance of a permanent injunction takes place only after a trial on the merits, in which the burden of proof must be founded on a preponderance of the evidence. Thus, the standard of review for the issuance of a permanent injunction is the manifest error standard. Fern Creek Owners’ Association, Inc., 08-1694 at p. 10, 21 So.3d at 376. Considering the evidence presented and jurisprudence interpreting similar restrictions on the commercial use of residential property, we cannot say that the trial court erred in granting a permanent injunction based on its finding that the art lessons provided by Mrs. Stuntz violated restriction 5.1.1.
While this appeal was pending, Mrs. Stuntz filed a peremptory exception raising the objection of prescription directly with this court. In the exception, Mrs. Stuntz argues that even if the art lessons she conducts in her home are considered a commercial enterprise, the Association should be precluded from enforcing restriction 5.1.1 and denied injunctive relief based on the liberative prescription provided under La. C.C. art. 781. That article states:
No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of *594 the restriction that has been violated. [Emphasis added.]
Louisiana Code of Civil Procedure article 2163 allows an appellate court to consider a peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. Thus, the exception is properly before this court.
As previously stated, Mrs. Stuntz testified that she has been giving art lessons in her home since moving into the subdivision in October 2006. Moreover, |sshe has maintained several websites, wherein she advertises the art lessons she provides, since 2002. Accordingly, Mrs. Stuntz asserts that the Association should be barred from enforcing restriction 5.1.1 and receiving injunctive relief because she has openly been providing art lessons in the subdivision in excess of the two-year prescriptive period contained in La. C.C. art. 781.
For the purpose of La. C.C. art. 781, some activity which is noticeable and apparent must occur on the lot, and at that point, the two-year prescriptive period commences. Investment Management Services, Inc. v. Village of Folsom, 00-0832, p. 7 (La.App. 1st Cir.5/11/01), 808 So.2d 597, 604. Moreover, it has been observed that La. C.C. art. 781 has been interpreted and applied to provide that:
The two-year prescription begins to run from the commencement of a noticeable violation rather than the day the plaintiff acquires knowledge of the violation. Ordinarily, the prescription commences when the violation of the restriction is neither secretive nor clandestine. An activity conducted on a modest scale may not be noticeable or may not be a violation at all; but the same type of activity, if expanded, may become a noticeable violation.
A.N. Yiannopoulos, Predial Servitudes § 197 at 455, in 4 Louisiana Civil Law Treatise (3d ed.2004) (footnotes omitted).
With these principles in mind, mere advertisement, without some correlating, noticeable activity on the immovable property at issue, would be insufficient to commence prescription under La. C.C. art. 781. Furthermore, we decline to hold that mere maintenance of a website or advertisement on the internet is sufficient to establish a noticeable violation.
Other than her assertion of the maintenance of various websites to advertise her services since 2002, Mrs. Stuntz’s testimony at trial reveals that the earliest her actions of providing art lessons in her home became noticeable was in the fall of 2009. At trial, Mrs. Stuntz identified several members of the subdivision who had taken or were taking art lessons in her home, but she could not recall any member taking a lesson in her home before 2009. She explained that “[a]t that point[,] I 19wasn’t aggressively marketing. It was all on the website, but it was very passive.” She also admitted that in fall 2009, she handed out postcards in the subdivision and placed a sign in her yard advertising her art lessons. When she received the letter from the Association Board in March 2010, indicating that she was in violation of the subdivision restrictions regarding the posting of signs and parking, in addition to restriction 5.1.1, Mrs. Stuntz stated she immediately removed the sign and made arrangements for parking. The Association filed its petition for injunctive relief on July 12, 2010, prior to the lapse of two years from the fall of 2009, when Mrs. Stuntz’s actions of providing art lessons in her home became noticeable.
Thus, the Association’s action for injunc-tive relief to enforce restriction 5.1.1 is not prescribed, and, accordingly, we overrule the exception.
*595 CONCLUSION
For the foregoing reasons, we affirm the trial court’s finding that the art lessons given by Mrs. Stuntz in her home is a commercial enterprise in violation of the subdivision restrictions of the Bayou Terrace Estates Homeowners Association. Accordingly, we affirm the permanent injunction issued by the trial court. Moreover, finding that prescription has not accrued, we overrule the peremptory exception based on prescription filed by Mrs. Stuntz. All costs of this appeal are east to the appellant, Jessica Stuntz.
AFFIRMED.

. “Residential planned community” or "planned community” means a real estate development, used primarily for residential purposes, in which the owners of separately owned lots are mandatory members of an association by virtue of such ownership. La. R.S. 9:1141.2(7).

. According to La. R.S. 9:1141.5, building restrictions may be established to regulate *591 building standards, specified uses, and improvements of association property.

. The trial court found that "there is a distinction between having an office in your house where you do some administrative functions and they bill from your house, make phone calls from your office as opposed to having an enterprise where you’re making money from activities being conducted within your home such as those being conducted by Ms. Stuntz.”