WELCH, J.
LThis is an appeal by the intervenors, Tiger Truck Stop, Inc. (“Tiger Truck Stop”) and Michael Sandlin, from a judgment in favor of the plaintiffs, granting *11 permanent and mandatory injunctive relief against the State of Louisiana, Department of Wildlife and Fisheries (“DWF”) relative to a permit request by Michael Sandlin to DWF, allowing him to possess a male tiger (“Tony”) on the premises of Tiger Truck Stop. Additionally, before this Court is a motion to strike, filed by the appellees/plaintiffs. For reasons that follow, we grant the motion to strike; we dismiss the appeal, in part, as moot; and we reverse, in part, and affirm, in part, the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
Tiger Truck Stop is a service station located just off of Interstate 10 in Grosse Tete in Iberville Parish, Louisiana. In 2001, Tiger Truck Stop acquired ownership of Tony, and since that time, Tony has lived and been exhibited on the premises of Tiger Truck Stop. Michael Sandlin is the sole stockholder and registered agent of Tiger Truck Stop.
In effect when Tiger Truck Stop acquired Tony was an Animal Control Ordinance that had been unanimously adopted by the Iberville Parish Police Jury. Section 3-91 of the Ordinance provided:
Display of wild or exotic animals prohibited
No person shall keep or permit to be kept on his premises any wild, exotic, vicious animal or reptile for display or for exhibition purposes whether gratuitously or for a fee. This section shall not apply to zoological parks, performing animal exhibitions, circuses, or veterinary clinics.
In 2006, the Louisiana Legislature enacted House Bill 795, which was introduced by former State Representative Warren Triehe, Jr., who is a plaintiff in this matter. The bill was ultimately signed by the Governor of Louisiana and Lbecame Act 715. See 2006 La. Acts, No. 715, § 1. This legislation enacted La. R.S. 56:6(31) to provide as follows:
The [Louisiana Wildlife and Fisheries] commission, through its secretary:
[[Image here]]
(31) Shall promulgate rules and regulations to control the importation and private possession of big exotic cats including but not limited to tigers, lions, leopards, jaguars, cheetahs, and hybrids resulting from cross-breeding of such cats. The rules shall provide exceptions for big cats traditionally kept by colleges and universities as school mascots, animal sanctuaries, zoos, wildlife research centers, and scientific organizations. Such rules shall address Internet purchase of such animals. Such rules shall also provide for permits for certain institutions and for owners who can prove previous ownership. Violation of rules and regulations adopted pursuant to the provisions of this Paragraph constitutes a class two violation punishable as provided in R.S. 56:32.
In June 2007, the Louisiana Wildlife and Fisheries Commission promulgated rales and regulations to implement 2006 La. Acts, No. 715, § 1, which are set forth in LAC 76V.115. These regulations provide, in pertinent part, as follows:
§ 115. Possession of Potentially Dangerous Wild Quadrupeds, Big Exotic Cats, and Non-Human Primates
A. This commission finds that possession of certain potentially dangerous ... big exotic cats ... poses significant hazards to public safety and health, is detrimental to the welfare of the animals, and may have negative impacts on conservation and recovery of some threatened and endangered species.
1. The size and strength of such animals in concert with their natural *12 and unpredictable and/or predatory-nature can result in severe injury or death when an attack upon a human occurs. Often such attacks are unprovoked and a person other than the owner, often a child, is the victim. Furthermore, there is no approved rabies vaccine for such animals, so even minor scratches and injuries inflicted upon humans or other animals could be deadly.
2.Responsible possession of these potentially dangerous ... big exotic cats ... necessitates that they be confined in secure facilities. Prolonged confinement is by its nature stressful to these animals and proper long-term care by experienced persons is essential to the health and welfare of these animals and to society.
* * *
|4B. This commission regulation prohibits importation and private possession, and otherwise regulates certain ... big exotic cats ... as provided herein.
C. 1. Except as provided herein, it shall be unlawful to import into, possess, purchase or sell within the state of Louisiana, by any means whatsoever ... any of the following species or its subspecies of ... big exotic cats, ... domesticated or otherwise ...:
[[Image here]]
h. The following big exotic cats: i. tigers;
⅜ ⅜ *
2. Holders of a Potentially Dangerous Wild Quadruped Permit allowing possession of any listed animal, where the permit is valid on the effective date of this regulation, will be “grandfathered” and the permit will be renewed annually until existing permitted captive animals expire, or are legally transferred out of state, or are transferred to a suitable facility. No additional listed animals may be acquired by any means whatsoever, including breeding.
[[Image here]]
E. Exempted Entities. The following organizations and entities shall be exempt from this regulation, including permitting:
1. zoos accredited or certified by the American Zoo and Aquarium Association (AZA) ...
2. research facilities as defined in the Animal Welfare Act as found in the United States Code Title 7, Chapter 54, § 2132(e) ...; and
3. any person transporting any listed animal through the state ... ;
4. circuses ...;
5. Louisiana colleges or universities, for possession of a big exotic cat of the species traditionally kept by that college or university as a school mascot....
F. Permitted Entities. The following organizations and entities may be exempted from this regulation after applying for and receiving a permit from the department to possess any listed animal under the following conditions:
1. other zoos and educational institutions not covered under Paragraphs E. 1-2 above ...;
|B2. animal sanctuaries accredited or certified by the American Zoo and Aquarium Association (AZA)....
[[Image here]]
H.- Big Exotic Cats. An individual who legally possesses one or more exotic cats listed in Subparagraph C.l.h. above on August 15, 2006 (the effective date of [2006 La. Acts, No. 715]) and who can prove legal ownership is authorized to *13 keep those exotic cats under the following conditions:
1. Only those exotic cats legally possessed on August 15, 2006 will be permitted. Additional exotic eats cannot be acquired by any means whatsoever, including breeding.
2. The individuals listed in this Subsection must annually apply for and receive a permit from [DWF]. The permit application shall be on a form provided by [DWF] and require:
a. The name, address, telephone number, driver’s license number, and date of birth of applicant;
[[Image here]]
e. proof of legal ownership of the exotic cat on August 15, 2006. Proof of legal ownership includes original purchase documents, veterinary records, or other documentation, acceptable to [DWF], demonstrating ownership; ....
[[Image here]]
4. Permittee or designee must live on the premises. Designee must have the ability to carry out all requirements of the permittee.
[[Image here]]
13. In addition to complying with this regulation, permittee must comply with any and all applicable federal, other state, or local law, rule, regulation, ordinance, permit, or other permission. Failure to comply with any such law, rule, regulation, ordinance, permit, or other permission constitutes a violation of this regulation.
[[Image here]]
J. penalty for violation. Unless another penalty is provided by law, violation of these regulations will be a Class Two violation as defined in Title 56 of the Louisiana Revised Statutes. In addition, upon conviction for violation of these regulations, any license/permit may be revoked and the quadrupeds or other animals seized in connection with the violation will be forfeited.
| (¡(Emphasis added).
Following the promulgation of these rules, DWF notified Michael Sandlin that he would have to obtain a permit for Tony; apparently, Michael Sandlin then submitted an application for a permit to DWF. On October 15, 2008, Edward A. Songy, Jr., the Chief Administrative Officer for the Iberville Parish Council, sent DWF a letter notifying DWF that it had received “several complaints regarding the tiger being housed at the Tiger Truck Stop” and informing DWF of Iberville Parish Ordinances Section 3-91. Shortly thereafter, on November 17, 2008, Robert Barham, the current Secretary of DWF, denied Michael Sandlin’s permit application for his failure to meet LAC 76:V.115(H)(13), because he was not in compliance with Iber-ville Parish Ordinances, Section 3-91, relating to the possession of big exotic cats.
Following a lawsuit by Michael Sandlin and Tiger Truck Stop against Iberville Parish and DWF,[2] Iberville Parish Ordinances, Section 3-91 was amended by the Iberville Parish Council to provide for Sections 3-91.1 through 3-91.5 so as to exempt “[t]he tiger that is currently located at the Tiger Truck Stop” from the provisions of Section 3-91 “retroactive to August 15, 2006.” Thereafter, on December 14, 2009, DWF, through Secretary Bar-ham, issued Potentially Dangerous Quadruped and Non-Human Primate Permit *14 No. P44 to Michael Sandlin for “male tiger/Tony/unknown age/microchip # 477E201A4C.” This permit was valid for one year. On December 10, 2010, DWF, through Secretary Barham, reissued Permit No. P44 for one year.[3]
|7On April 11, 2011, the Animal Legal Defense Fund (“ALDF”), Warren Triche, Jr., Brandi J. Sutten, and Jennifer Torqua-ti[4] filed a “Petition for Injunctive Relief and Writ of Mandamus Against Unlawful Permitting of Potentially Dangerous Quadruped” against DWF and Secretary Bar-ham.[5] In the petition, the plaintiffs alleged that Michael Sandlin “did not qualify for ‘grandfathered’ status and did not meet the requirements of the regulations promulgated by the [Louisiana Wildlife and Fisheries] Commission” on December 14, 2009, when Secretary Barham issued Permit No. P44 to him. Specifically, the plaintiffs alleged Michael Sandlin was ineligible for a permit, because on August 15, 2006 (the effective date of 2006 La. Acts, No. 715), he illegally possessed Tony at Tiger Truck Stop, as his possession was in violation of Iberville Parish Ordinances Section 3-91, and because neither Sandlin nor his designees lived on the premises of Tiger Truck Stop.
The plaintiffs argued that the issuance and reissuanee or renewal of the permit violated the Louisiana Revised Statutes and the Louisiana Administrative Code, endangered public safety by exposing Louisiana residents to a dangerous wild animal, and diminished the welfare of a critically endangered species by permitting Michael Sandlin to continue Tony’s inhumane captivity at Tiger Truck Stop. The plaintiffs claimed that DWF and Secretary Barham had a statutory duty to deny the permit application and that their issuance and reissuance or renewal of the permit was arbitrary, capricious, and an abuse of discretion. Therefore, the plaintiffs sought mandatory injunctive relief and/or a writ of mandamus, ^ordering DWF and Secretary Barham to cease permitting the possession of Tony by Michael Sandlin by immediately revoking the December 10, 2010 permit, preliminary and permanent injunctive relief prohibiting DWF and Secretary Barham from issuing any future permits, and the release of the tiger into the custody of the ALDF or an accredited animal sanctuary for care, treatment, and purposes of habitation.
In response, DWF filed an answer, essentially denying the factual allegations of the plaintiffs’ petition. The trial court conducted a hearing on May 5, 2011, and issued a ruling on May 6, 2011; an order for final/permanent injunction in accordance with the trial court’s oral ruling was signed by the trial court on May 19, 2011. The order (judgment) granted a preliminary and permanent injunction against DWF from issuing any new permits to Michael Sandlin or Tiger Truck Stop al *15 lowing Michael Sandlin or Tiger Truck Stop to possess Tony; provided that a mandatory injunction ordering DWF to revoke Michael Sandlin’s current permit (# P44 issued on December 10, 2010) would not issue at that time;[6] denied the plaintiffs’ request for a writ of mandamus; denied the plaintiffs’ request that Tony be released to ALDF; assessed all costs to DWF; and ordered plaintiffs to furnish security in the amount of $1,500 for the provisions of the order (judgment) to take effect
Michael Sandlin and Tiger Track Stop did not participate in the May 5, 2011 hearing, and they claimed that they were not provided notice and were unaware of the hearing. Michael Sandlin and Tiger Truck Stop then filed a Petition in Intervention on May 20, 2011, which was denied by the trial court, because they had “no standing.” Michael Sandlin and Tiger Truck Stop then filed a Motion for Leave of Court to Intervene, which was granted on June 17, 2011. The intervenors |Bthen filed an Amended Petition in Intervention and Motion for a New Trial on June 24,-2011, arguing that they were indispensable parties, that the previous judgment issuing the injunctions should be vacated, and that there should be a new trial on the matter. That same day, the trial court denied the intervenors’ motion for new trial. The intervenors then filed a supervisory writ application with this court.
While the intervenors’ writ application was still pending with this court, the inter-venors filed (in the trial court) a peremptory exception raising the objections of nonjoinder of a party needed for just adjudication (or indispensable parties), no right of action, and no cause of action, and a dilatory 'exception raising the objections of prematurity and unauthorized use of a summary proceeding. At a hearing on August 15, 2011, the trial court overruled all of the intervenors’ dilatory and peremptory exceptions, and a judgment in accordance with the trial court’s ruling was signed on September 7, 2011. The intervenors filed a motion for new trial with respect to overruling the objection of nonjoinder of an indispensable party, which the trial court denied on September 14, 2011.[7]
Additionally, the trial court scheduled a hearing on the plaintiffs’ request for a mandatory injunction commanding DWF to revoke Michael Sandlin’s permit and to take the tiger into custody. On August 11, 2011, DWF filed a peremptory exception raising the objections of no right of action and no cause of action as “to all remaining causes of action stated in [the] [plaintiffs’ [pjetition.”
Thereafter, on August 29, 2011, another panel of this court granted the intervenors’ supervisory writ, finding “that the denial of the Motion for New Trial was in error” and that the intervenors “were parties needed for just adjudication in this case.” Animal Legal Defense Fund, et al. v. State of Louisiana, Department of Wildlije and Fisheries, 2011-4525 (La.App. 1st Cir.8/29/11) {unpublished writ action). This court then reversed the trial court’s ruling denying the motion for new trial, vacated the trial court’s May 19, 2011 order for final/permanent injunction, and remanded the case for further proceedings. Id.
*16 The intervenors then filed a supplemental and amended petition in intervention and for a writ of mandamus, seeking to have DWF and Secretary Barham promulgate rules and regulations allowing a corporation to obtain a permit to possess a tiger and to enjoin DWF and Secretary Barham from taking any adverse action against the intervenors with regard to their possession of Tony.
A hearing on all pending issues was held on November 2, 2011.[8] By judgment signed on November 17, 2011, the trial court overruled the peremptory exception raising the objections of no cause of action and no right of action filed by DWF; denied the intervenors’ petition for writ of mandamus and other relief; granted the plaintiffs’ request for injunctive relief, in part; issued a final/permanent injunction against DWF from issuing any new permits to Michael Sandlin and/or Tiger Truck Stop for the tiger (“Tony” microchip # 477E201A4C) now located at Tiger Truck Stop in Iberville Parish; issued a mandatory injunction against DWF, ordering DWF to revoke the Potentially Dangerous Quadruped and Non-Human Primate Permit # P44 currently issued in the name of Michael Sandlin; denied the plaintiffs’ request for an order that the tiger (“Tony” microchip # 477E201A4C) now located at Tiger Truck Stop in Iberville Parish be taken into custody or seized by DWF, forfeited, and released to the ALDF or some other entity; assessed all costs of these proceedings to DWF; and ordered plaintiffs to furnish security in the amount of $5,000 for the provisions of the order (judgment) to take effect.[9] [i;MichaeI Sandlin and Tiger Truck Stop filed a motion for a new trial, which the trial court denied on December 6, 2011, and they now devolutively appeal the November 17, 2011 judgment and the December 6, 2011 denial of the new trial.[10]
MOTION TO STRIKE
The plaintiffs have filed a motion to strike, seeking to have this court strike the brief of the appellants/intervenors in its entirety, or alternatively, striking exhibits “B” and “C” from the brief and removing said exhibits from the record of this matter.[11] See Uniform Rules, Courts of Appeal — Rule 2-12.13. The plaintiffs allege the brief is non-conforming, in that exhibits “B” and “C” to the brief post-date the judgments being appealed, have no bearing on the judgments being appealed, and are in violation of Uniform Rules, Courts of Appeal — Rules 2-12.4 and 2-12.5. The exhibits at issue are a transcript of a ruling issued by the trial court on May 3, 2012, with regard to a subsequent request by the plaintiffs for a writ of mandamus to DWF for the seizure of Tony, and a June 7, 2012 judgment of dismissal in an entirely separate proceeding, which involves some of the same parties as this suit. These exhibits were for proceedings after judgment was rendered in this case, and *17 therefore, could not be part of the record on appeal herein. Accordingly, we grant the plaintiffs’ motion to strike exhibits “B” and “C” from the appellants’/intervenors’ brief, as those exhibits are not properly before this court.[12]
| ^ASSIGNMENTS OF ERROR
On appeal, the intervenors assert that the trial court erred in: (1) overruling DWF’s peremptory exception raising the objection of no right of action; (2) granting the plaintiffs’ request for a mandatory injunction requiring DWF to revoke Potentially Dangerous Quadruped and NonHuman Primate Permit # P44, currently issued in the name of Michael Sandlin, allowing him to possess Tony the Tiger (microchip # 477E201A4C) at Tiger Truck Stop; and (3) issuing a permanent injunction prohibiting DWF from issuing any new permits allowing Michael Sandlin to possess a tiger at Tiger Truck Stop.[13]
LAW AND DISCUSSION

No Right of Action

An action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681; see also Industrial Companies, Inc. v. Durbin, 2002-0665 (La.1/28/03), 837 So.2d 1207, 1216. Standing is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court. Mouton v. Department of Wildlife & Fisheries for State of La., 95-0101 (La.App. 1st Cir.6/23/95), 657 So.2d 622, 626, writs denied, 95-2161 and 95-2164 (La.11/17/95), 663 So.2d 710 and 711. The requirement of standing is satisfied if it can be said that the plaintiff has a legally protectable and tangible interest at stake in the litigation. Id.; see also Municipal Employees’ Retirement System v. Office of Rural Development, 95-2505 (La.App. 1st Cir.6/28/96), 676 So.2d 835, 836, writ denied, 96-1989 (La.11/8/96), 683 So.2d 269. In other words, standing requires that the plaintiff have an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. Id.
The function of the peremptory exception raising the objection of no right of action is to determine whether the plaintiff belongs to a class of persons to whom the law grants the cause of action asserted in the suit. See La. C.C.P. art. 927(A)(6); Industrial Companies, 837 So.2d at 1216. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit; it assumes that the petition states a valid cause of action for some person ahd questions whether the plaintiff in the particular case *18 is a member of the class that has a legal interest in the subject matter of the litigation. Benoit v. Allstate Insurance Company, 2000-0424 (La.11/28/00), 773 So.2d 702, 708. Whether a plaintiff has a right of action is a question of law; therefore, it is reviewed de novo on appeal. Gibbs v. Delatte, 2005-0821 (La.App. 1st Cir.12/22/05), 927 So.2d 1131, 1135, writ denied, 2006-0198 (La.4/24/06), 926 So.2d 548.
In the appellants’ first assignment of error, they contend that the trial court erred in overruling the peremptory exception raising the objection of no right of action filed by DWF against the plaintiffs. Thus, the appellants are seeking review of the November 17, 2011 judgment overruling the DWF’s objection of no right of action, as opposed to seeking review of the September 7, 2011 interlocutory judgment overruling their own objection of no right of action.[14] According to the record, on August 11, 2011, DWF filed its peremptory exception raising the objection of no right of action as “to all remaining causes of action stated in [the] [p]laintiffs’ petition.” Notably, at that time, the only “remaining causes of action” luin the plaintiffs’ petition was the request for a mandatory injunction ordering DWF to immediately revoke Michael Sandlin’s December 10, 2010 permit to possess Tony, because the trial court had already adjudicated all other issues raised in the plaintiffs’ petition in the May 19, 2011 judgment, and this court had not yet vacated that judgment.[15] Thus, it appears that DWF’s objection of no right of action was limited to the plaintiffs’ request for a mandatory injunction.
However, under La. C.C.P. art. 865, we are authorized to construe every pleading so as “to do substantial justice.” Therefore, in the interest of justice, we will also address the issue of the plaintiffs’ standing or right of action to request a permanent injunction against DWF barring it from issuing any new permits to Michael Sand-lin or Tiger Truck Stop relative to the possession of Tony.[16]
The writ of injunction — a harsh, drastic, and extraordinary remedy — should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 2004-0270 (La.App. 1st Cir.3/24/05), 906 So.2d 660, 664. Irreparable injury has been interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Id. However, a showing of irreparable injury is not necessary when the act sought to be enjoined is unlawful. Id. The general rule is that an injunction will only issue in its prohibitory form; however, a mandatory injunction, which “commands the doing of some action,” may also be issued to “undo what has been illegally done.” Id.
*19 As previously noted, the plaintiffs sought both a permanent injunction against DWF relative to the issuance of any future permits to Michael Sandlin or 11 BTiger Truck Stop for the possession of Tony and a mandatory injunction against DWF relative to the revocation of Michael Sandlin’s current permit to possess Tony. These two requests for injunctive relief are substantively different, in that one seeks to prohibit future action by DWF and the latter seeks to command DWF to take specific action. Accordingly, we will address the issue of the plaintiffs’ standing or right of action as we address the merits of each request for relief.

Mandatory Injunction

In the plaintiffs’ petition, they asserted that Michael Sandlin was ineligible for a permit at the time that it was issued and that Secretary Barham and/or DWF had a ministerial duty to deny the permit application. Thus, the plaintiffs requested injunctive relief, ordering Secretary Bar-ham and/or DWF to immediately revoke the permit. The permit at issue that the plaintiffs sought to have revoked (Potentially Dangerous Quadruped and Non-Human Primate Permit No. P44 currently issued in the name of Michael Sandlin) was issued on December 10, 2010, and was valid for a period of one year. Although the trial court issued a mandatory injunction against DWF, ordering DWF to revoke that permit pursuant to the November 17, 2011 judgment, by the end of December 2011, that permit would have expired by its own terms.
It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. Louisiana State Board of Nursing v. Gautreaux, 2009-1758 (La.App. 1st Cir.6/11/10), 39 So.3d 806, 811, unit denied, 2010-1957 (La. 11/5/10), 50 So.3d 806. An issue is moot when a judgment or decree on that issue has been “deprived of practical significance” or “made abstract or purely academic.” Id. Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no h ¡¡practical relief or effect. Id. If the case is moot, there is no subject matter on which the judgment of the court can operate. Id.[17]
In this case, regardless of the propriety of the trial court’s ruling granting the mandatory injunctive relief (and its finding that the plaintiffs had standing to request such relief), given that the permit at issue has expired by its own terms, any judgment by this court relative to those issues will have no practical relief or effect for the parties and would thus be an impermissible advisory opinion. Accordingly, we find all issues raised in this appeal relative to the plaintiffs’ request for mandatory injunctive relief are moot, and we dismiss that part of the appeal relative, to those issues.

Permanent Injunction

The intervenors contend that the ALDF and the other plaintiffs do not have standing to seek judicial intervention and in-junctive relief against DWF relative to the permit DWF issued to Michael Sandlin for Tony, because they do not have a sufficient interest. As previously set forth, with regard to the plaintiffs’ request for permanent injunctive relief, the plaintiffs alleged that they (Warren Triche, Jr., Brandi J. *20 Sutten, Jennifer Torquati, and John Kelle-her) were Louisiana taxpayers and residents, that John Kelleher was a licensee of DWF, and that ALDF was an animal protection organization that had expended organizational funds seeking to protect Tony and challenge the DWF permit; that Michael Sandlin was ineligible for a permit at the time that it was issued; that Secretary Barham and/or DWF had a ministerial duty to deny the permit application; and that the issuance and renewal of the permit violated Louisiana state law (La. R.S. 56:6(31) and the Louisiana Administrative Code (LAC 76:V.115). Thus, based on these alleged violations and 117the interests asserted, the plaintiffs sought, and the trial court granted, a permanent injunction against Secretary Barham and/or DWF, enjoining them from issuing any future permits to Michael Sandlin.
It is well-settled that a taxpayer has the right to seek judicial review of acts of public servants that are alleged to have been contrary to law, unconstitutional, or illegally confected. Bunge North America, Inc. v. Board of Commerce and Industry and Louisiana Department of Economic Development, 2007-1746 (La. App. 1st Cir.5/2/08), 991 So.2d 511, 523, writ denied, 2008-1594 (La.11/21/08), 996 So.2d 1106; Municipal Employees’ Retirement System, 676 So.2d at 837. Additionally, our jurisprudence also recognizes the right of a taxpayer to enjoin unlawful action by a public body. Bunge North America, Inc., 991 So.2d at 523. A taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode that will increase the burden of taxation or otherwise unjustly affect the taxpayer or his property. Id. The fact that the taxpayer’s interest may be small and insusceptible of accurate determination is not sufficient to deprive him of that right. Id. Thus, when a taxpayer seeks to restrain action by a public body, he is afforded a right of action upon a mere showing of an interest, however small and indeterminable. Municipal Employees’ Retirement System, 676 So.2d at 837; cf. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441, 446-47 (La.1980) (holding that a taxpayer attempting to compel the performance of a public duty by a public entity is required to demonstrate a special or particular interest distinct from that of the public at large.)
With these precepts in mind, we do not find any error in the trial court’s determination that plaintiffs Triche, Sut-ten, Torquati and Kelleher had standing and a right of action to bring this suit for permanent injunctive relief. The record reflects that plaintiffs Triche, Sutten, Tor-quati, and Kelleher are citizens and | ^taxpayers of Louisiana; that Kelleher has paid for and held fishing, trawling, and crabbing licenses from DWF for over five years and has paid to have several boats registered with DWF; and that DWF receives monies for its annual budget from the state’s general fund. Thus, because plaintiffs Triche, Sutten, Torquati, and Kelleher pay fees and taxes, which are utilized to fund the DWF and its operations, we find that these plaintiffs have established sufficient interests to sustain a right of action to seek an injunction to refrain any alleged unlawful conduct by the DWF, including the issuance of any future permits to Michael Sandlin for the possession of Tony, which may be unlawful.[18] Accordingly, that part of the No- *21 vember 17, 2011 judgment of the trial court overruling DWF’s peremptory exception raising the objection of no right of action as to plaintiffs Triche, Sutten, Tor-quati and Kelleher, is affirmed.
However, based on the record before us, we do not find that plaintiff ALDF has alleged and proven sufficient interest to sustain a right of action seeking an injunction against any unlawful conduct by DWF. The evidence in the record establishes that ALDF is a national, non-profit organization of attorneys and supporting members specializing in the just treatment of animals within our legal system. In addition to ALDF’s legal advocacy, it engages in extensive media campaigns to raise public awareness of animal cruelty and abuse. With regard to this case, “ALDF has expended significant organizational resources in publicizing and participating in the campaign to free Tony the Tiger from Tiger Truck Stop,” which included “countless hours [spent] researching and drafting” the petition in this matter and “time, money, and other resources” communicating Tony’s story to the public through the media. While the efforts of ALDF with regard to the protection of animals from cruelty and abuse are certainly commendable, its 11flspending of organizational resources seeking to protect Tony and challenge the permit issued by DWF does not confer upon ALDF a real and actual interest or a legally pro-tectable and tangible interest at stake in this action for an injunction against DWF for alleged unlawful conduct. See La. C.C.P. art. 681. Accordingly, that part of the November 17, 2011 judgment of the trial court overruling the DWF’s peremptory exception raising the objection of no right of action as to plaintiff ALDF is reversed.
Lastly, we must determine the propriety of the trial court’s decision to grant permanent injunctive relief, enjoining DWF from alleged unlawful conduct, ie., issuing an unlawful permit to Michael Sandlin relative to the possession of Tony. In the trial court’s oral reasons for judgment, the trial court found that Michael Sandlin did not legally own or possess Tony on August 15, 2006; that although Michael Sandlin as an individual could apply for a permit, he was not the owner of Tony; and that neither Michael Sandlin nor his designees lived on the premises of Tiger Truck Stop, where Tony was kept. Based on these factual findings, the trial court concluded that Michael Sandlin did not meet the legal requirements set forth by DWF in order to be “grandfathered” and issued a permit for the possession of Tony. See LAC 76:V.l 15(H)(1), (2), and (4). Thus, a permanent injunction was granted, enjoining DWF from issuing a permit to Michael Sandlin to possess Tony at Tiger Truck Stop.
Considering the evidence in the record, we find that the trial court’s findings in this regard are reasonably supported by the record and are not clearly wrong. Furthermore, based on these factual findings, we find no error in the trial court’s legal conclusion that Michael Sandlin did not meet the legal requirements for a Potentially Dangerous Wild Quadruped, Big Exotic Cats and Non-Human Primate Permit and that permanent injunctive relief, enjoining DWF from issuing Michael Sandlin future permits relative to the possession of Tony at Tiger Truck Stop was | gpwarranted.[19] The record establishes that on August 15, 2006, Tony was not *22 owned by Michael Sandlin; rather, he was owned by Tiger Truck Stop. Additionally, on August 15, 2006, the ownership and possession of Tony by Tiger Truck Stop and the possession by Michael Sandlin in Iberville Parish was in violation of a local ordinance, and thus, illegal. Although that local ordinance was amended in 2009 retroactive to August 15, 2006, the amendment to the ordinance did not change the fact that on August 15, 2006, neither Tiger Truck Stop nor Michael Sandlin legally possessed or legally owned Tony. Only an individual who legally possessed an exotic cat (such as a tiger) and who could prove legal ownership of that exotic cat is entitled to a permit for that cat. See LAC 76:V.115(H)(1). Accordingly, that part of the judgment of the trial court granting a final/permanent injunction against DWF, enjoining it from issuing any new permits to Michael Sandlin and/or Tiger Truck Stop for the tiger (“Tony” microchip # 477E201A4C) now located at Tiger Truck Stop in Iberville Parish is affirmed.
CONCLUSION
For all of the above and foregoing reasons, we grant the motion to strike, we dismiss the appeal, in part, as moot; and we affirm, in part, and reverse, in part, the November 17, 2011 judgment of the trial court.
All costs of this appeal are assessed to the appellants, Michael Sandlin and Tiger Truck Stop, Inc.
MOTION TO STRIKE GRANTED; APPEAL DISMISSED, IN PART, AS MOOT; JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.

. See “Michael Sandlin & Tiger Truck Stop, Inc. vs. Iberville Parish and State of Louisiana through Department of Wildlife & Fisheries,” Number 67,287 on the docket of the 18th Judicial District Court, Parish of Iber-ville, State of Louisiana.

. There is no dispute by the parties that at the end of December 2011, the December 10, 2010 permit expired by its own terms.

. The individual plaintiffs alleged that they were residents and taxpayers of Louisiana. In an amended petition, the ALDF alleged that it was "an animal protection organization that has diverted organizational resources to educate the public about Tony’s plight and to challenge the issuance of Michael Sandlin’s permit through an administrative petition.”

.By amended petition filed on October 10, 2011, John Kelleher was added as a plaintiff; he was alleged to be a Louisiana resident, taxpayer and licensee, in that he had paid for and used various licenses (issued by DWF) from 2005 through the present. Additionally, the amended petition added the intervenors, Michael Sandlin and Tiger Truck Stop, as defendants to this action.

. According to a subsequent motion filed by the plaintiffs, the trial court declined to rule on that request for relief at that time.

. According to the trial court’s written reasons for denying the motion for new trial, it determined that since Michael Sandlin and Tiger Truck Stop had intervened and were allowed to participate in any hearing, the objection was moot.

. For this hearing, all of the parties entered into stipulations of fact and stipulations as to the authenticity and admissibility of all documentary evidence submitted at the hearing. Additionally, the parties stipulated that those stipulations constituted a trial on the merits.

. DWF filed a motion for new trial with respect to the assessment of costs to DWF. The record does not contain a written ruling with respect to this motion; however, the minutes of the trial court reflect that the motion was denied in open court on January 23, 2012.

. DWF has not appealed the trial court's decision herein.

. This motion was referred to this panel by another panel of this court. See Animal Legal Defense Fund, et al. v. State of Louisiana, Department of Wildlife & Fisheries, et al., 2012-0971 (La.App. 1st Cir.9/13/12) (unpublished action on motion).

. The sanction permitted to be imposed for a non-conforming brief is left to the appellate court’s discretion. Northshore Regional Medical Center, L.L.C. v. Dill, 2011-2271 (La.App. 1st Cir.6/8/12), 94 So.3d 155, 160, writ denied, 2012-1494 (La. 10/8/12), 98 So.3d 862. Under the circumstances of this case, we find that striking the brief of the appellants/inter-venors in its entirety would be unreasonably harsh. Therefore, we grant the plaintiffs’ alternative request to strike the offending exhibits from the brief and record in this matter.

. Because the appellants are the intervenors in this suit, they have a right to appeal any judgment by which they are aggrieved. See La. C.C.P. arts. 1091 and 2086; see also Mike M. Marcello, Inc. v. Louisiana Gaming Control Board, 2004-0488 (La.App. 1st Cir.5/6/05), 903 So.2d 545, 547-48. However, the inter-venor takes the proceeding as he finds it, and he cannot substitute himself for one of the parties and urge matters that enlarge the issues or modify the basic procedural nature of the principal demand by way of intervention. Marcello, 903 So.2d at 548. The intervenor cannot change the issue between the parties and can raise no new issues between the defendant and plaintiff that they themselves have not raised. Id.

.A judgment overruling an exception is generally considered an interlocutory judgment and is not appealable. See La. C.C.P. arts. 1841 and 2083. However, we could have considered the correctness of the September 7, 2011 interlocutory judgment in conjunction with the appeal of the November 17, 2011 judgment, which is a final and appealable judgment. See People of Living God v. Chantilly Corporation, 251 La. 943, 947-48, 207 So.2d 752, 753 (1968).

. This court did not vacate the May 19, 2011 judgment until August 29, 2011. See Animal Legal Defense Fund, et al. v. State of Louisiana, Department of Wildlife and Fisheries, 2011-1525 (La.App. 1st Cir.8/29/11) (unpublished writ action).

. See also La. C.C.P. art. 927(B) (providing that the appellate court may notice the right or interest of the plaintiff to institute suit on its own motion).

. While we recognize that there are exceptions to the mootness doctrine, given that we have considered herein the trial court's order for a permanent injunction against DWF, prohibiting it from issuing new permits to Michael Sandlin, we find none of the exceptions applicable to this case. See Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 (La. 10/20/98), 720 So.2d 1186, 1194-96.

. Based on our conclusion herein that plaintiffs Sutten and Torquati have proven sufficient interests for standing as taxpayers, we need not address whether they have proven sufficient interests for standing due to aesthetic injuries.

. The standard of review for the issuance of a permanent injunction is the manifest error standard of review. Bayou Terrace Estates Home Owners Ass’n Inc. v. Stuntz, 2011-1886 (La.App. 1st Cir. 7/10/12), 97 So.3d 589, 593.